KOEHLER, Appellant, v. HAECHLER and another, Respondents.

*March 5—March 30, 1965.*

For the appellant there was a brief by *Ed. W. Knappe,* attorney, and *Royal E. Cass* of counsel, both of Milwaukee, and oral argument by *Mr. Cass.*

For the respondents there was a brief by *Bernstein, Wessel, Weitzen & Lewis* of Milwaukee, and oral argument by *John H. Wessel.*

FAIRCHILD, J. The only claim of fraud is that the shares sold to plaintiff were issued in excess of the number au-

thorized. There is no claim that the financial condition of the corporation was misrepresented. Apparently all parties realized at the time of the sale of stock that the corporation was in difficulty.

Sec. 330.19, Stats., fixes a six-year period of limitation, applicable here, but provides that a cause of action for relief on the ground of fraud is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud.

Actual and complete knowledge of the fraud on the part of the plaintiff is not necessary in order to set the limitation period running.

"When the information brought home to the aggrieved party is such as to indicate where the facts constituting the fraud can be effectually discovered upon diligent inquiry, it is the duty of such party to make the inquiry, and if he fails to do so within a reasonable time he is, nevertheless, chargeable with notice of all facts to which such inquiry might have led." [1]

Commenting on the above passage, the court stated in 1961: [2]

"Under the rule quoted above, it is not necessary that a defrauded party have knowledge of the ultimate fact of fraud. What is required is that it be in possession of such essential facts as will, if diligently investigated, disclose the fraud. The burden of diligent inquiry is upon the defrauded party as soon as he has such information as indicates where the facts constituting the fraud can be discovered."

The learned county judge was of the opinion that before January 6, 1958 (six years before the action was begun) Koehler had available to him the previous minutes of the meetings of stockholders and directors of the corporation and thus "was placed in possession of facts which, if followed by

---

[1] *O'Dell v. Burnham* (1884), 61 Wis. 562, 569, 21 N. W. 635.

[2] *Milwaukee Western Bank v. Lienemann* (1961), 15 Wis. (2d) 61, 65, 112 N. W. (2d) 190.

diligent inquiry, would have disclosed a fraud, if any existed."

Koehler was elected a director in 1957 and presumably had access to all the corporate records then if not before. We find nothing, however, which came to his attention as stockholder or director which should have alerted a reasonable man in his position to make a further search. Surely one in possession of a stock certificate whose rights as a stockholder appear to be recognized by all concerned would ordinarily assume without further inquiry that the shares evidenced by the certificate were valid.

The only information in the entire record which suggests that Mr. Utech owned 188 (or 189) shares after the corporation sold 60 shares to others in April, 1954, is contained in the Utech probate proceeding. Although Mr. Koehler or his counsel ultimately did look in that record, we know of no fact which should have alerted Mr. Koehler to look there before he did, and, in any event, the inventory was filed February 18, 1959, less than five years before this action was begun.

Accordingly we are unable to affirm the judgment on the basis that the action was barred by the running of the period of limitations.

In analyzing the decision of the county court with respect to the running of limitations, however, we have necessarily considered everything which was before the court on the motion for summary judgment. We conclude that defendants were entitled to summary judgment upon the theory first presented to the county court.

The crux of the matter is whether Charles Utech transferred 60 shares of his stock to the corporation on April 6, 1954. If he did, it is undisputed that the 20 shares issued to Koehler were valid and authorized. The following corporate records are relevant:

(1) The minutes show that a special meeting of the board of directors was held April 6, 1954. There was a waiver of

notice, signed by Loraine Utech and Chas. Utech. One of the purposes of the meeting, recited in the waiver was:

". . . for the purpose of accepting from Chas. Utech his stock certificate Numbered Five (5) for 189 shares of stock in this corporation and exchanging it for stock certificate Numbered Ten (10) plus the sum of Three Hundred Dollars as compensation in full payment for the Sixty (60) shares of stock sold thereby to this Corporation."

At the meeting, the following resolution was adopted:

" 'That the offer of Chas. Utech to exchange this stock certificate Numbered Five (5) for 189 shares of stock in this Corporation and accept in its place stock certificate Numbered Ten (10) for 129 shares of stock in this Corporation plus the sum of Three Hundred Dollars ($300) as payment in full for the difference of Sixty (60) shares of said stock, be and the same is hereby accepted; that the offer be consummated forthwith.' "

(2) A written offer to purchase, dated April 13, 1954, was signed by Koehler and two others, each offering to purchase 20 shares. The minutes show a special meeting of the board on that date. There is a waiver of notice, signed by Loraine and Charles, and a resolution accepting the offers was adopted. Loraine signed the minutes as secretary, and Charles signed an attestation as chairman.

(3) A copy of a stub in the corporate stock book shows that Certificate No. 10 was issued to Chas. Utech on April 20, 1954, for 129 shares. It indicates that these 129 shares were part of 189 shares originally represented by Certificate No. 5. The stubs for other certificates were not presented, but there is nothing to suggest that they were inconsistent in any way with the information on the stub of Certificate No. 10. Mr. Koehler presented a copy of the certificate issued to him. It bore number 8, was dated April 20, 1954, the same as the stub of No. 10, and was signed by Loraine A. Utech, secretary, and Chas. Utech, president.

Plaintiff Koehler has produced nothing which directly challenges the accuracy of the corporate minutes or other records, and on their face they permit no inference except that Chas. Utech sold 60 shares of his stock to the corporation and the corporation resold them to Mr. Koehler and two others. The corporation needed cash. Utech received $300 for his stock, and the three new stockholders paid in $6,000 for the same shares. No claim has been made that the corporation could not, under the circumstances existing, acquire and resell the 60 shares upon these terms. The shares were sold for full par value. The transactions did not increase the total number of shares outstanding.

These records are sufficient to meet the statutory standard for summary judgment for a defendant: ". . . such evidentiary facts, including documents or copies thereof, as shall show that his denials . . . are sufficient to defeat the plaintiff. . . ." [3]

Mr. Koehler contends, however, that the inconsistent statement of Mrs. Haechler, made in the probate proceedings, is a fact "sufficient to entitle him to a trial."

Where a party moving for summary judgment relies upon a particular assertion in the affidavit of a prospective witness as establishing his right to summary judgment, proof of a prior statement by the prospective witness, inconsistent in a material respect, is ordinarily sufficient to entitle the opposing party to trial, and defeat the motion for summary judgment. [4] Here, however, the moving party is relying upon documentary proof and there is no direct attack on the authenticity or accuracy of the documents. Mrs. Haechler has explained, in an affidavit, that the assertion of ownership of 188 shares rather than 129 shares was a mistake. The shares were considered as having no value, and the number of shares reported was approximately the same as the number repre-

---

[3] Sec. 270.635, Stats.

[4] *Foryan v. Firemen's Fund Ins. Co.,* ante, p. 133, 133 N. W. (2d) 724.

sented by the old certificate. One could readily appreciate how the mistake could occur.

Under the circumstances, we do not consider the assertion in the probate proceeding as impeachment of the corporate records. It may suggest that the old Certificate No. 5 was not endorsed and delivered so as to complete a transfer.[5] But even so, Mr. Utech would have been estopped from claiming continued ownership. He had participated in the meetings of the board of directors on April 6 and 13, 1954, signed the minutes, and signed the certificate issued to plaintiff.

We conclude that defendants sufficiently established by documentary proof that there was no issuance of stock in excess of the number of shares authorized, and that plaintiff did not show facts entitling him to trial.

*By the Court.*—Judgment affirmed.

HALLOWS, J., took no part.

---

[5] See secs. 183.01 (1), 183.09, and 183.10, Stats.