HARRIS, Appellant, v. KELLY and others, Respondents: GNAS and others, Defendants.

*No. 156. Argued April 2, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 360.)

For the appellant there were briefs by *Brian E. Butler* and *Stafford, Rosenbaum, Rieser & Hansen,* all of Madison, and oral argument by *Mr. Butler.*

For the respondents there was a brief by *James P. Brody, John S. Skilton* and *Foley & Lardner,* all of Milwaukee, and oral argument by *Mr. Skilton.*

HEFFERNAN, J. The action is for false imprisonment and abuse of process. Following the filing of affidavits

and counteraffidavits, the defendants' motion for summary judgment was granted, and the complaint was dismissed. Judgment was granted because the trial judge concluded that no material facts were in dispute and the facts as undisputed indicated that, as a matter of law, the plaintiff was unable to prove facts sufficient to sustain either of her causes of action.

It is the complaint of Naomi Harris that, on June 10, 1969, she went to the office of the Milwaukee Medical Society to ask that the death of her husband be investigated. She contends, however, that persons employed by the society refused to help her and, to get rid of her, called the police and induced the officer to commit her for observation under sec. 51.04 (1), Stats. The conduct of the employees of the Medical Society, it is contended, resulted in her false imprisonment, which was accomplished by abuse of process.

On the basis of affidavits filed and arguments before the court, the trial judge found that there were no material facts in dispute that required a trial.

The undisputed facts show that on June 10, 1969, Naomi Harris went to the office of Michael McManus at the Medical Society to discuss the society's failure to investigate the death of her husband, a doctor. She remained in his office from 11:15 a. m. to 2:15 p. m. McManus was with her except from 12:30 p. m. to 1:30 p. m., when he attended a meeting. When McManus reported to Kelly, then executive secretary of the Medical Society, that Naomi Harris was making it impossible for him to proceed with his normal work and she was refusing to leave, Kelly suggested calling the police. Kelly called the police, told them there was an emotionally upset woman on the premises disrupting the orderly affairs of the office, and requested police assistance in escorting her from the premises. Two police officers arrived at about 2:15 p. m., talked briefly with McManus,

and then spent some time alone with Naomi Harris, after which they took her by ambulance to Milwaukee County Hospital, Mental Health Division. She was kept at the hospital one day against her will and released.

The police took Naomi Harris to the hospital for temporary confinement pursuant to sec. 51.04 (1), Stats., which provides in part:

"The sheriff or any other police officer may take into temporary custody any person who is violent or who threatens violence and who appears irresponsible and dangerous. . . . This is an emergency provision intended for the protection of persons and property. Such person may be kept in custody until regular proceedings are instituted to cope with the case, but not exceeding 5 days."

There is only one material fact, found to be undisputed by Judge MOSER, that the plaintiff contends is disputed.

On the basis of the affidavits in this case, mainly depositions, the trial judge found:

"12. On the sole basis of his own observation and independent of any representation or information received from the dispatcher or from the defendant McManus or any employee of the defendant Medical Society, Patrolman Gnas decided to have the plaintiff temporarily detained under authority of the emergency provisions of s. 51.04 Wis. Stats. (1969)."

This finding goes to the heart of the plaintiff's case. In her suit against the Medical Society and its employees, Naomi Harris contends that they are liable for false imprisonment because they requested or induced the police to confine her to the hospital.

In respect to the tort of false imprisonment, Prosser, *Law of Torts* (4th ed., hornbook series, 1971), sec. 11, p. 47, states:

"One who participates in an unlawful arrest, or procures or instigates the making of one without proper authority, will be liable for the consequences; but the defendant must have taken some active part in bringing

about the unlawful arrest itself, by some 'affirmative direction, persuasion, request or voluntary participation.' There is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment . . . ."

Hence, if Finding 12 is undisputed, the plaintiff cannot recover. The gist of Patrolman Gnas' statement, to paraphrase Prosser, tends to prove conclusively that the police made their own judgment in respect to Naomi Harris' commitment, and the Medical Society's employees merely furnished information. In addition, the defendants argue that the undisputed facts are sufficient to show a prima facie compliance with the standards stated in *Maniaci v. Marquette University* (1971), 50 Wis. 2d 287, 295, 184 N. W. 2d 168, in respect to the use of sec. 51.04, Stats.

The facts asserted in the affidavits, insofar as they are material to Officer Gnas' testimony, show that, after Naomi Harris was in his office about three or four hours, McManus reported to Kelly that he wanted to proceed with his normal work, but she refused to leave. Kelly called the police and told them there was a woman on the premises disrupting the orderly affairs of the office, she had been there about four hours, she was emotionally upset and they had tried to calm her down, she refused to leave, and Kelly requested police assistance in escorting her from the premises. McManus said Kelly did not advise the police that Naomi Harris was a mental problem.

The policeman taking Kelly's call recorded the "MO" code, standing for mental observation. A Milwaukee policeman said the code might be used if the caller used words like "mentally disturbed," "mentally irrational," or "mentally deranged." The code might also be used if the caller described bizarre conduct or dress by a person.

In the instant case the "MO" code was apparently relayed to Officer Gnas when he was assigned to respond to Kelly's call. Gnas deposed that, although an officer

may receive an "MO" dispatch, he will not assume it actually is an "MO" until he arrives at the scene and makes his own decision. This is so because the police get calls describing an "MO" situation and it may be nothing more than a disgruntled customer or someone with a grudge against another person.

Gnas said that, when he arrived at the Medical Society, secretaries told him Naomi Harris had been causing commotion all day and refused to leave. Gnas could not recall talking to anyone else at the Medical Society before seeing Naomi Harris. McManus stated he talked to Gnas briefly when he arrived and told him there was a woman on the premises who was disrupting the office and she refused to leave. McManus said he did not tell Gnas that Naomi Harris had a mental problem.

Gnas and another officer were alone with Naomi Harris for some time, during which period they questioned her. Gnas reported that she was not acting like a normal person. She was screaming at the top of her lungs, standing, then sitting, and then lying and shaking. Gnas reported that he alone decided to take Naomi Harris to Milwaukee County Hospital. He said no one influenced him and no one requested that he reach that decision. He said neither Kelly nor McManus made any request as to handling Naomi Harris.

Under their powers conferred by sec. 51.04 (1), Stats., the police took Naomi Harris to Milwaukee County Hospital, Mental Health Division, for treatment. She was released the next day.

There is no statement in any of the affidavits that contradicts or puts in question the material fact asserted by Gnas and by the Medical Society employees that Gnas was not influenced by the society's employees, and that he exercised his own judgment solely on the basis of his own observations of Naomi Harris.

Naomi Harris contends, however, that the testimony raises an inference that one or more of the defendants

influenced the judgment of Officer Gnas. She states that McManus told her she was insane. From this, she apparently concludes that, if she was told that by McManus, Officer Gnas was told the same thing. This is, of course, not necessarily so and contrary to the sworn statement of Gnas and the defendants. The trial judge properly stated that the inference that Naomi Harris claims can be drawn from the evidence is mere speculation.

A more interesting argument is that a jury could infer from conflicting statements made by Officer Gnas that he was not telling the truth. The plaintiff correctly asserts, citing *Koehler v. Haechler* (1965), 27 Wis. 2d 275, 281, 133 N. W. 2d 730, that:

"Where a party moving for summary judgment relies upon a particular assertion in the affidavit of a prospective witness as establishing his right to summary judgment, proof of a prior statement by the prospective witness, inconsistent in a material respect, is ordinarily sufficient to entitle the opposing party to trial, and defeat the motion for summary judgment."

The alleged contradiction arises from affidavits of two persons produced by the plaintiff who stated that on June 11, 1969, they heard Officer Gnas state that, when Naomi Harris was taken to the hospital, she was not violent or threatening violence and was not dangerous or unresponsible. This is inconsistent with his deposition wherein he stated that he concluded that Naomi Harris' condition fit that required by sec. 51.04, Stats., before a temporary commitment could be ordered.

It is argued that a jury, confronted by this discrepancy, could disregard Gnas' testimony and infer that his commitment of Naomi Harris was not the result of his own observation and judgment but the result of the influence exerted by the society's employees.

We do not agree. Whether or not Officer Gnas exercised proper discretion under the statute is not a material issue of fact before this court on summary

judgment. A jury could disbelieve Officer Gnas' statement in toto, but the disbelief of Gnas goes only to his conduct and not to that of any employee of the society. While the disbelief of Gnas' testimony would eliminate the corroboration of the testimony of McManus and Kelly that they did not try to influence and did not even discuss Naomi Harris' condition with the officer, there still would be no affirmative evidence to contradict the facts they asserted. The undisputed testimony of McManus and Kelly supports the fact that they did not influence Officer Gnas. Moreover, the plaintiff has the burden of proof. To prevail, she must produce affidavits that assert the fact that the society's employees did more than give "information to legal authorities." Prosser, *supra*. No such affidavits exist.

No tort was committed by giving information to the police in respect to the problem that Naomi Harris was creating at the society's office. In the absence of any affidavit asserting a personal knowledge that the defendants by a false statement induced the police to execute a commitment under sec. 51.04, Stats., there is no unlawful imprisonment—at least none induced by the defendants. There is no showing that any unlawful imprisonment took place and was caused by any action of the defendants on this appeal.

The same factors that we have discussed in respect to false imprisonment also control the disposition of plaintiff's claim of abuse of process. There was no evidence that the defendants were involved in any way in the use by the police of sec. 51.04, Stats., to confine Naomi Harris. The society's employees concededly called the police to report that Naomi Harris was on their premises disrupting work, but what steps the police took to handle the problem after they arrived, or what process they used to temporarily commit Naomi Harris, were not matters with which the defendants had anything to do.

There is a complete lack of evidence in this respect. No facts are disputed on any material issue. The material facts fail to show any involvement of the defendants in the police decision to invoke process under sec. 51.04 or to temporarily commit Naomi Harris. No substantial facts are in dispute which, were they resolved in favor of Naomi Harris at trial, would allow her to recover.

*By the Court.*—Judgment affirmed.