**Ray Dean BURGESS, Plaintiff/Appellant,**

v.

**Anthony S. HARLEY, Defendant,**

and

**Putnam County Highway Department and Putnam County, A Body Politic, Defendants/Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 10, 1996.

Application for Permission to Appeal Denied by Supreme Court Oct. 28, 1996.

Ernest C. Onks, Sr., Ronald Thurman, Cookeville, for plaintiff/appellant.

Daniel H. Rader, III, Moore, Rader, Clift & Fitzpatrick, Cookeville, for defendant.

## OPINION

KOCH, Judge.

This appeal arises from a collision in which a motorist was injured when his vehicle was struck by a pickup truck that had entered an intersection without stopping at a stop sign. The injured motorist filed suit in the Circuit Court for Putnam County against the truck driver for failing to stop and against Putnam County for creating and maintaining a dangerous intersection. The trial court granted summary judgment for the county, and the injured motorist appealed. We have determined that Putnam County did not demonstrate that it is entitled to a judgment as a matter of law and, therefore, we vacate the summary judgment and remand the case.

### I.

Ray Burgess was traveling westward on Highway 70 in Putnam County on the morning of March 7, 1992. As he was passing through the intersection of Highway 70 and Hawkins–Crawford Road, the rear portion of his automobile was struck by a pickup truck being driven by Anthony Harley. Mr. Harley was driving north along Hawkins–Crawford Road and failed to heed the stop sign where Hawkins–Crawford Road intersected with Highway 70. The force of the collision flipped Mr. Burgess's automobile over, and Mr. Burgess was seriously and permanently injured.

Hawkins–Crawford Road changes to a slight downhill grade as it approaches the Highway 70 intersection, thereby obscuring the surface of Highway 70 from motorists approaching from the south. A stop sign at the intersection was visible approximately 150 feet before the intersection despite some large trees on private property on the right shoulder of Hawkins–Crawford Road. In addition to a stop sign at the intersection, the county had erected a yellow "stop ahead" warning sign on Hawkins–Crawford Road approximately 440 feet before the intersection.

Shortly after the collision, Mr. Harley told the investigating officer that his brakes failed "approximately 50 to 75 yards" before the intersection. He also told another acquaintance who had witnessed the collision that he had forgotten about the stop sign and that his brakes had failed. Later, after meeting with Mr. Burgess's lawyers, Mr. Harley stated in an affidavit and deposition that he did not recall seeing either the "stop ahead" sign or the stop sign and that it was too late to stop when he realized he was approaching the intersection.

Mr. Burgess filed a personal injury action on March 5, 1993 against Mr. Harley, the Putnam County Highway Department, and Putnam County.[1] On April 8, 1993, Putnam County moved for a summary judgment asserting that Mr. Harley's failure to obey the stop sign was the sole proximate cause of Mr. Burgess's injuries. At the hearing on its motion, Putnam County also asserted that it was entitled to summary judgment because of governmental immunity and because another suit Mr. Burgess had filed against Mr. Harley was still pending.[2] The trial court granted Putnam County's motion for summary judgment on July 9, 1993.

This court dismissed the first appeal from the July 9, 1993 order for lack of a final judgment because the trial court had not disposed of Mr. Burgess's claim against Mr. Harley.[3] On November 4, 1994, the trial court entered an order severing Mr. Burgess's claims against Putnam County from his claims against Mr. Harley and directing

1. Putnam County and the Putnam County Highway Department will be collectively referred to as "Putnam County" or as simply "the county."

2. Mr. Burgess filed a personal injury action against Mr. Harley alone on March 2, 1993. The lawyer representing Mr. Burgess in the present case questioned the authority of the lawyer who

filed the prior suit to represent Mr. Burgess. Putnam County did not press the issue, and the trial court did not treat it as controlling or dispositive.

3. Burgess v. Harley, App. No. 01A01–9312–CV–00519 (Tenn.Ct.App. Dec. 13, 1993).

that its order constitute a final judgment with regard to Mr. Burgess's claims against Putnam County. This appeal followed.

## II.

The basic standards governing appellate review of summary judgments are now settled. Our task is confined to reviewing the record to determine whether the requirements of Tenn.R.Civ.P. 56 have been met. *Payne v. Breuer*, 891 S.W.2d 200, 201 (Tenn. 1994); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991). A summary judgment is appropriate only when there is no genuine dispute of material fact with regard to the claim or defense asserted in the motion, *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993), and when the moving party is entitled to a judgment in its favor as a matter of law. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993).

No presumption of correctness attaches to the trial court's findings in a summary judgment case. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). We must consider the evidence using the standard commonly associated with a motion for directed verdict made at the close of the plaintiff's proof. *Gray v. Amos*, 869 S.W.2d 925, 926 (Tenn.Ct.App.1993); *Axline v. Kutner*, 863 S.W.2d 421, 423 (Tenn.Ct.App.1993). Accordingly, we must view the evidence in the light most favorable to the non-moving party, *Haynes v. Hamilton County*, 883 S.W.2d 606, 613 (Tenn.1994); *Speaker v. Cates Co.*, 879 S.W.2d 811, 813 (Tenn.1994), and we must also draw all reasonable inferences in the non-moving party's favor. *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn.1994). We should not affirm a summary judgment if any doubt or uncertainty exists with regard to the facts or the conclusions to be drawn from the facts. *Carvell v. Bottoms*, 900 S.W.2d at 26; *Byrd v. Hall*, 847 S.W.2d at 211.

The moving party has the initial burden of producing evidence to support its summary judgment motion. *Byrd v. Hall*, 847 S.W.2d at 213; *Byrd v. Bradley*, 913 S.W.2d 181, 183 (Tenn.Ct.App.1995). A party may move for summary judgment on the ground that the opposing party will be unable to produce sufficient evidence at trial to withstand a motion for directed verdict. *Byrd v. Hall*, 847 S.W.2d at 213. However, the motion must be supported by more than a mere conclusory assertion that the plaintiff cannot prove its case. *Lewter v. O'Connor Management, Inc.*, 886 S.W.2d 253, 255 (Tenn.Ct.App.1994). In order to satisfy its burden, the moving party must produce or point out evidence in the record which, if uncontradicted, entitles the movant to a judgment as a matter of law. *Armes v. Hulett*, 843 S.W.2d 427, 429 (Tenn.Ct.App. 1992).

## III.

We turn first to Putnam County's assertion that it is immune from suit under the Governmental Tort Liability Act because the stop sign at the intersection of Highway 70 and Hawkins–Crawford Road was on the State's right of way. While it is undisputed that the stop sign itself is owned and maintained by the State, Mr. Burgess's negligence action covers far more than the erection or maintenance of the stop sign. It asserts that the intersection itself and the portion of Hawkins–Crawford Road south of the intersection were defective, unsafe, and dangerous.

## A.

Local governments are not insurers against all accidents on their roads and streets. *Helton v. Knox County*, 922 S.W.2d 877, 883 (Tenn.1996); *Swain v. City of Nashville*, 170 Tenn. 99, 103–04, 92 S.W.2d 405, 406 (1936). They are, however, required to use ordinary care to keep their roads and streets in reasonably safe condition for the traveling public. *Blackburn v. Dillon*, 189 Tenn. 240, 243, 225 S.W.2d 46, 47 (1949); *Bryant v. Jefferson City*, 701 S.W.2d 626, 626–27 (Tenn.Ct.App.1985); *Baker v. Seal*, 694 S.W.2d 948, 950 (Tenn.Ct.App.1984). Accordingly, Tenn.Code Ann. § 29–20–203(a) (Supp.1995) removes a local government's immunity from suit "for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned

and controlled by such governmental entity."[4]

Suits brought pursuant to Tenn.Code Ann. § 29–20–203(a) have three essential ingredients. First, the local government must own and control the location or instrumentality alleged to have caused the injury. Tenn.Code Ann. § 29–20–203(a); *Harris v. Williamson County*, 835 S.W.2d 588, 590 (Tenn.Ct.App.1992) (county immune from suit because it did not own or control the allegedly defective traffic sign). Second, the location or instrumentality must be "defective, unsafe, or dangerous." Tenn.Code Ann. § 29–20–203(a). Third, the local government must have "constructive and/or actual notice" of the defective, unsafe, or dangerous condition. Tenn.Code Ann. § 29–20–203(b).

▮▮▮ Liability under Tenn.Code Ann. § 29–20–203(a) may be predicated on street signs or traffic control devices that cause or contribute to a defective, unsafe, or dangerous condition. Tenn.Code Ann. § 29–20–203(a); *Fretwell v. Chaffin*, 652 S.W.2d 755, 757 (Tenn.1983); *Swafford v. City of Chattanooga*, 743 S.W.2d 174, 177 (Tenn.Ct.App. 1987). A local government's decision whether to erect traffic control or safety devices may be immune from suit under the discretionary function exception in Tenn.Code Ann. § 29–20–205(1).[5] However, the failure to maintain or to complete the installation of traffic control devices may result in liability when a defective, unsafe, or dangerous condition is thereby created. *Kirby v. Macon County*, 892 S.W.2d at 409; *Fretwell v. Chaffin*, 652 S.W.2d at 757 (allowing vegetation to obscure a traffic control sign); *Swafford v. City of Chattanooga*, 743 S.W.2d at 177 (failure to finish painting lane markings).

## B.

### OWNERSHIP AND CONTROL OF THE INTERSECTION

▮▮▮ Putnam County's principal governmental immunity argument is that it is immune from suit because it did not own or control the stop sign at the intersection of Highway 70 and Hawkins–Crawford Road. This undoubtedly true fact is not outcome determinative, however, because Mr. Burgess's claims against Putnam County are not limited to the placement, erection, or maintenance of the stop sign itself. His claims involve the entire intersection and the southerly approach to the intersection.

Putnam County has not disputed that it owns and controls all the portions of Hawkins–Crawford Road other than the State's right of way around Highway 70. Its employees conceded in their affidavits and depositions that the county had control over Hawkins–Crawford Road from "ditch to ditch" and that the State's right of way only extended thirty-three feet from the center of Highway 70. The employees also stated that they mowed the shoulders of Hawkins–Crawford Road twice a year, that they placed a "stop ahead" sign on Hawkins–Crawford Road in the early 1980s, and that they had modified the intersection at approximately the same time. At this stage of the proceedings, these admissions provide sufficient factual basis to conclude that the county owns and controls the location where the allegedly dangerous condition exists.

## C.

### THE DEFECTIVE, UNSAFE, OR DANGEROUS CONDITION

▮▮▮ The second ingredient to a cause of action under Tenn.Code Ann. § 29–20–

---

**4.** Mr. Burgess has specifically and repeatedly disclaimed that he is predicating Putnam County's liability on Tenn.Code Ann. § 29–20–205 (1980) which waives governmental immunity for injuries caused by the negligent acts or omissions of local governmental employees. Liability under Tenn.Code Ann. § 29–20–203(a) is independent from liability under Tenn.Code Ann. § 29–20–205. *Helton v. Knox County*, 922 S.W.2d at 885; *Kirby v. Macon County*, 892 S.W.2d 403, 406 (Tenn.1994). Thus, Putnam County's arguments based on the requirements of Tenn.Code

Ann. § 29–20–205 are of little relevance in this case.

**5.** *Helton v. Knox County*, 922 S.W.2d at 886–87 (decision to retain wooden paddle boards and stone curbs on a bridge rather than installing metal guardrails); *Kirby v. Macon County*, 892 S.W.2d at 408 (decision to install wooden wheel guards instead of standard metal guardrails); *Butler v. City of Dyersburg*, 798 S.W.2d 776, 782 (Tenn.Ct.App.1990) (decision to install traffic control devices).

203(a) is a defective, unsafe, or dangerous condition. Determining whether the condition of a road or street is dangerous or hazardous is a factual inquiry. *Helton v. Knox County,* 922 S.W.2d at 882; *Goodermote v. State,* 856 S.W.2d 715, 723 (Tenn.Ct. App.1993). The inquiry should include consideration of (1) the physical aspects of the roadway, (2) the frequency of accidents at the particular location, and (3) the testimony of expert witnesses. *Sweeney v. State,* 768 S.W.2d 253, 255 (Tenn.1989).

Mr. Burgess offered two types of proof with regard to the condition of the intersection and Hawkins–Crawford Road. First, he presented the affidavits of three persons who are living or who had lived adjacent to the intersection. Second, he presented the affidavit of a traffic engineer containing the engineer's opinion concerning the dangerousness of the intersection. Putnam County insists that these affidavits should not be considered because they contain testimony that would not be admissible at trial. *See* Tenn.R.Civ.P. 56.05. We disagree.

One of Mr. Burgess's affidavits was prepared by Dr. James E. Clark, a professor of civil engineering at Clemson University. According to the resume attached to his affidavit, Dr. Clark specializes in transportation and traffic engineering and has taught graduate level courses in highway safety engineering. Dr. Clark has published articles on traffic control systems and is a member of the Institute of Traffic Engineers and the Transportation Research Board. The affidavit states that Dr. Clark has first-hand knowledge of the intersection because he has inspected it personally. These facts are sufficient to establish that Dr. Clark is competent to give an expert opinion in this case.

Rather than paraphrasing Dr. Clark's affidavit, we note the following excerpt:

When viewed by a driver traveling in a northward direction, Hawkins–Crawford Road drops with a downward grade as it intersects with U.S. Highway 70. On the other side of U.S. Highway 70, Hawkins–

Crawford Road rises on an upward grade and continues northward as Plunk Whitson Road. These elevation changes on Hawkins–Crawford Road conceals [*sic*] the intersection with U.S. Highway 70 and creates [*sic*] the illusion to the driver that Hawkins–Crawford Road continues northward. Because of this illusion, it is important to warn the driver about this intersection and alert the driver to stop. A series of large trees on the right shoulder of Hawkins–Crawford Road as it approaches U.S. Highway 70 prevents the approaching driver from seeing the stop sign until the driver is approximately 150–160 feet from the intersection. This does not provide adequate stopping sight distance for a speed limit of 45 M.P.H. Approaching the intersection of U.S. Highway 70 by traveling in a northward direction, a driver must be warned of this approaching intersection in time to safely stop his vehicle. The existing stop sign and stop ahead warning sign do not adequately warn the driver.

In addition to Dr. Clark's affidavit, Mr. Burgess provided the trial court with the affidavits of two persons currently living adjacent to the intersection and one person who lived adjacent to the intersection from 1968 to 1978.[6] Each of these persons described the difficulty that approaching motorists had in seeing the intersection and the stop sign. They also recounted frequent incidents of vehicles skidding on gravel and "screeching" their brakes when attempting to stop at the intersection. They also stated that there had been frequent personal injury and property damage accidents at the intersection, and many occasions when vehicles attempting to stop had driven into their ditches and through their fences.

The residents' testimony is based on their personal knowledge and is relevant and material to the question of whether the intersection is dangerous or unsafe. At this stage of the proceedings, we must view this evidence in a light most favorable to Mr. Burgess, and we must draw all reasonable inferences in

---

**6.** This resident's affidavit may not be relevant since the county modified the intersection after she moved away. We cannot make a relevancy determination at this stage of the proceeding

because we lack proof concerning the nature and extent of the changes in the intersection between 1978 and 1992.

Mr. Burgess's favor. When viewed in this light, the affidavits offered by Mr. Burgess establish a genuine factual dispute concerning whether the intersection of Highway 70 and Hawkins–Crawford Road is unsafe or dangerous.

### D.

### NOTICE TO PUTNAM COUNTY

 A local government cannot be found liable for a dangerous condition on a road or street unless it had actual or constructive notice of the condition. The evidence before the trial court when it considered the motion for summary judgment raises several genuine issues concerning whether Putnam County had actual or constructive notice that the intersection of Highway 70 and Hawkins–Crawford Road is hazardous or dangerous.

The record contains no proof concerning when the intersection was first constructed or who designed it. There is likewise no proof concerning whether Hawkins–Crawford Road existed before Highway 70 or vice versa. The record contains evidence that the intersection was modified in the early 1980s, but the nature and extent of these modifications is in dispute. The county asserts that the intersection was modified substantially, while a resident who lives adjacent to the intersection states that it has remained "essentially unchanged since 1967."

The record contains evidence that the county had actual notice of the intersection's condition. George Shanks, who lives adjacent to the intersection, stated in an affidavit that he had discussed the condition of the intersection with the former county highway superintendent and had even offered to give the county an easement over his property to correct the problem. Sheila Shanks provided an affidavit stating that she and seventy-five to eighty other county residents signed a petition requesting the county to correct the problems with the intersection. Frances Wilson, who lived adjacent to the intersection for ten years, stated in her affidavit that she had contacted the highway road superintendent repeatedly about the dangerous condition of the intersection.

In addition to these citizen complaints, Putnam County was also named as a defendant in two suits as a result of another collision at the intersection in May 1980. These suits alleged that the intersection was dangerous and that the county had notice of the dangerous condition. Along with these complaints, the lawyer representing one of the plaintiffs sent a letter to the county executive stating that there was a "dangerous illusion" at the intersection and that "there ... [was] no advance warning sign, advising motorists of this dangerous intersection." The letter also alluded to the county highway department's awareness of the problem "because of many, many complaints by citizens."[7]

The incumbent county road officials disclaimed any knowledge of problems at the intersection and asserted that they did not maintain records of citizen complaints. Responses based on sloppy record keeping and short memories do not effectively rebut allegations of actual notice under the governmental tort liability act. If anything, they create a genuine factual dispute concerning whether the county had actual or constructive notice of the condition of the intersection which would prevent granting the county a summary judgment on the ground that it did not have actual or constructive notice.

Putnam County also insists that the complaints the former county officials might have received concerned the condition of the intersection before the modifications in the early 1980s and were, accordingly, irrelevant to the current condition of the intersection. This argument would be well-taken if the modifications made in the early 1980s substantially altered the intersection and if the citizens' complaints predated the modifications.

We have already noted that there is a genuine factual dispute concerning the nature and extent of the modifications to the intersection. In addition, at least two of the affidavits submitted on behalf of Mr. Burgess recount complaints that appear to have been made after the modifications were complet-

---

7. The lawyer who wrote this letter is now one of the lawyers representing Mr. Burgess.

ed.[8] We cannot conclude at this juncture that all Mr. Burgess's evidence concerning the complaints to the county highway officials about the condition of the intersection is irrelevant. Accordingly, we must conclude that there exists a material factual dispute concerning the county's notice of the condition of the intersection.

When viewed in a light most favorable to Mr. Burgess, the record contains genuine factual disputes concerning whether the city had or should have had actual or constructive knowledge of the dangerous condition at the intersection. These disputes, taken together with the factual dispute concerning whether the intersection was dangerous and unsafe, lead to the conclusion that Putnam County is not entitled to a judgment as a matter of law with regard to its defense to Mr. Burgess's action based on the Governmental Tort Liability Act.

### IV.

Putnam County also asserts that it is entitled to a judgment as a matter of law because the condition of the intersection could not have been the proximate cause of Mr. Burgess's injuries. It portrays Mr. Harley's brake failure as either the sole proximate cause or as the superseding, intervening cause of the collision. Thus, the failure of Mr. Harley's brakes is pivotal to the county's motion. We have determined that there is a genuinely disputed factual issue with regard to the nature and extent of the brake failure on Mr. Harley's truck and, therefore, that the county was not entitled to a summary judgment on the question of causation.

### A.

■ Despite their utility and value, summary judgments can never be used to replace a trial when material facts are genuinely disputed. *Blocker v. Regional Medical Ctr.,*

722 S.W.2d 660, 663 (Tenn.1987); *Poore v. Magnavox Co.,* 666 S.W.2d 48, 49 (Tenn. 1984). Summary judgments should not be used to find facts, to resolve factual disputes, or to choose among various permissible factual inferences. *Byrd v. Hall,* 847 S.W.2d at 216. Thus, courts should not weigh the evidence in summary judgment proceedings, *Byrd v. Hall,* 847 S.W.2d at 211; *Bellamy v. Federal Express Corp.,* 749 S.W.2d 31, 33 (Tenn.1988), and likewise, they should not make credibility determinations. *Byrd v. Hall,* 847 S.W.2d at 212 (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)); *McDowell v. Moore,* 863 S.W.2d 418, 421 (Tenn.Ct.App.1992); *Citizens Sav. Bank & Trust Co. v. Hardaway,* 724 S.W.2d 352, 355 (Tenn.Ct.App.1986). The courts must deny a motion for summary judgment if any doubt exists with regard to the facts or the conclusions to be drawn from the facts. *Byrd v. Hall,* 847 S.W.2d at 211; *Gambill v. Middle Tenn. Medical Ctr., Inc.,* 751 S.W.2d 145, 147 (Tenn.Ct.App.1988).

### B.

Mr. Harley has given two essentially different accounts of the condition of his brakes and his ability to stop at the intersection. Immediately after the accident, he told the investigating officer and an eyewitness that his brakes had totally failed. In fact, he told the officer that his brakes failed not once, but twice, and that his transmission or clutch "locked up" or "messed up."[9] Faced with these mechanical failures, he stated that "the only thing I could think to do was to try to cut right or go straight. I tried to make a little effort to cut the wheel and it started to jump and I just went ahead and let it [the truck] go and it went straight across."

Mr. Harley's description of the condition of his brakes changed during the course of the

---

8. The affidavit of the resident who lived next to the intersection from 1968 to 1978 and the notice provided by the 1980 lawsuits appear to have predated the modifications to the intersection.

9. Mr. Harley, in his own words, stated:

I was coming down Hawkins–Crawford Road, going to make a right on [Highway] 70. I had approximately 50 to 75 yards about where that

oak tree is from the road I went to apply my brakes and they went all the way to the floor. I went to apply them again, they still went to the floor ... I knew I wasn't going to be able to stop all I could think of was trying to gear down—put my truck in neutral; I went to put it in second; wouldn't go; transmission locked up or clutch just messed up or something.

next year. In April 1993, Mr. Burgess's lawyers asked him to sign an affidavit to oppose the county's motion for summary judgment. On this occasion, Mr. Harley stopped short of admitting that he had total brake failure and stated for the first time that he was too close to the intersection to stop by the time he saw the stop sign. On this occasion, he stated:

> 4. I was *proceeding northward* between the railroad and U.S. Highway [70] at or around the speed of 45 miles an hour when suddenly I saw a Stop Sign and U.S. Highway 70 and applied my brakes. The brakes went way down and the pickup slowed up but not enough to stop me as I was too close to the highway by the time I could see the Stop Sign.
>
> 5. The Hawkins Crawford Road looked like it continued straight on without ever seeing U.S. Highway 70 which is an optical illusion.

Mr. Harley was deposed six weeks after preparing his affidavit and was asked to explain the discrepancies between his affidavit and his statements at the scene of the collision. In a classic effort to be a witness for all seasons, Mr. Harley explained that he had told the trooper and the eyewitness that his brakes had failed but that his statements at the scene might not have been "exactly correct" and that he "was claiming fault because [he] ... felt so bad over what had happened." He continued to insist that he did not have enough time to stop by the time he saw the stop sign and the intersection. However, he could not remember if he saw the stop sign or the stop ahead sign and could not explain why he did not see them other than to say that he was concentrating on the road. He also attempted to further distance himself from his original brake failure explanation using inadmissible hearsay statements attributed to the investigating trooper.[10]

Mr. Harley's credibility has been seriously undermined. We would not second-guess the trial court's decision to give his testimony no weight if this were an appeal from a bench trial. This is, however, an appeal from a summary judgment. Notwithstanding Mr. Harley's practically insurmountable credibility problems, his different accounts of the events immediately before the collision give rise to a genuine factual dispute concerning the condition of his brakes and their effect on his ability to avoid the accident. Resolving these issues now would require us to weigh the evidence and to judge Mr. Harley's credibility—two things we cannot do in a summary judgment proceeding.

The fact that Mr. Harley faces almost certain impeachment with his prior inconsistent statements is of little practical significance. Mr. Harley has not yet testified, and in light of the inconsistencies in the statements he has already made, we cannot reliably predict what his testimony at trial will be. Thus, we have no way to determine which of Mr. Harley's prior statements might be used to impeach him at trial.[11] If he testifies that his brakes, transmission, and clutch failed, Mr. Burgess's lawyers will attempt to impeach him using the statements in his affidavit and deposition. If, on the other hand, he testifies that his brakes only partially failed and that he did not see the intersection and stop sign in time to stop, Putnam County's lawyers will impeach him with his statements to the investigating officer and the eyewitness.

The chief purpose of using a prior inconsistent statement at trial is to undermine the witness's credibility. Cohen et al., *supra* note 11, § 613.1, at 406. Prior inconsistent statements need not be admissible as substantive evidence in order to be admissible for the purpose of impeachment. These statements may, however, also be considered

---

10. Mr. Harley claimed that the trooper told him "later that he went to my vehicle and worked on the brakes, applied the brakes, and that they went about two-thirds of the way to the floor." Mr. Harley's testimony is inadmissible hearsay and cannot be considered for the purpose of this summary judgment proceeding. *See* Tenn. R.Civ.P. 56.05.

11. Prior inconsistent statements may only be used to impeach a witness's trial testimony. They may not be used to impeach statements in depositions or affidavits that are not repeated at trial. *Doochin v. United States Fidelity & Guar. Co.,* 854 S.W.2d 109, 114 (Tenn.Ct.App.1993); Neil P. Cohen et al., *Tennessee Law of Evidence* § 613.2, at 407–08 (3d ed. 1995).

as substantive evidence if they qualify for admission under one of the rules of evidence. *Jones v. Lenoir City Car Works*, 216 Tenn. 351, 356, 392 S.W.2d 671, 673 (1965) (the prior inconsistent statement of a party is admissible as an admission against interest); Tenn.R.Evid. 803(1.2) (admission by a party-opponent); Cohen et al., *supra* note 11, § 613.1, at 406.

■ Evidence used to support or to oppose a motion for summary judgment must consist of "such facts as would be admissible in evidence." Tenn.R.Civ.P. 56.05. This rule does not require that the facts be admissible as substantive evidence, and thus an affidavit or deposition containing statements admissible for the purpose of impeachment may be considered in a summary judgment proceeding. *Koehler v. Haechler*, 27 Wis.2d 275, 133 N.W.2d 730, 733 (1965); *Lidster v. Jones*, 176 Ga.App. 392, 336 S.E.2d 287, 288 (1985).[12] Rather than being used to create material factual disputes, these statements are being used to demonstrate that the credibility of a pivotal witness is in question and thus that the determination of the issue should be left to the jury. Summary judgments, after all, should only be granted based on evidence that the fact-finder would not be at liberty to disbelieve. *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 942 (Tenn.Ct.App.1984); *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944).

■ Mr. Harley's statements concerning the condition of his brakes are admissible both for the purpose of impeachment and as substantive evidence because they are admissions by a party-opponent under Tenn. R.Evid. 803(1.2). His varying accounts of the nature and extent of his brake failure will require the fact-finder to determine his credibility and to determine whether a causal connection exists between the collision and the condition of his brakes.

12. There are, of course, practical limits to the admissibility of inconsistent statements. Factual disputes must be "genuine" in order to prevent a summary judgment. Accordingly, courts have refused to permit a party to create an issue of fact merely by preparing an affidavit contradicting the party's prior sworn testimony. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572,

## C.

■ In order to be a proximate cause of an injury, a negligent act or omission must have been a substantial factor in bringing about the injury. *Boling v. Tennessee State Bank*, 890 S.W.2d 32, 36 (Tenn.1994); *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn.1991). An injury may be proximately caused by more than one negligent act or omission. *Kelley v. Johnson*, 796 S.W.2d 155, 159 (Tenn.Ct.App.1990); *Stokes v. Leung*, 651 S.W.2d 704, 708 (Tenn.Ct.App. 1982). Thus, a negligent act or omission need not be the sole cause of an injury to be a proximate cause. *McClenahan v. Cooley*, 806 S.W.2d at 775; *Lancaster v. Montesi*, 216 Tenn. 50, 57, 390 S.W.2d 217, 221 (1965). Each person whose negligence is a proximate cause of an injury may be independently liable for the injury. *McClenahan v. Cooley*, 806 S.W.2d at 775.

■ Foreseeability is an important consideration in determining whether an act or omission is a legal cause of an injury. An act or omission will not be considered a proximate cause of an injury if a reasonable person could not have foreseen or anticipated the injury. *McClenahan v. Cooley*, 806 S.W.2d at 775. By the same token, a later negligent act will not be considered a superseding, intervening cause of an injury if it was reasonably foreseeable consequence of an earlier negligent act. *Speaker v. Cates Co.*, 879 S.W.2d 811, 815 (Tenn.1994); *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn.1992); *Evridge v. American Honda Motor Co.*, 685 S.W.2d 632, 635 (Tenn.1985); *Goodermote v. State*, 856 S.W.2d at 722.

■ Causation questions are fact-sensitive and require that the evidence be reviewed in light of logic, common sense, policy, and precedent. *Wyatt v. Winnebago Indus., Inc.*, 566 S.W.2d 276, 280 (Tenn.Ct.

578 (2d Cir.1969); *Baker v. A.H. Robins Co.*, 613 F.Supp. 994, 996 n. 3 (D.D.C.1985). The Eastern Section reached the same result by finding that two inconsistent statements canceled each other out and, therefore, had no probative value. *Price v. Becker*, 812 S.W.2d 597, 598 (Tenn.Ct. App.1991).

App.1977). These questions are normally left to the fact-finder unless the undisputed facts and the inferences drawn from the facts permit a reasonable person to draw but one conclusion. *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn.1994); *McClenahan v. Cooley*, 806 S.W.2d at 775; *Evridge v. American Honda Motor Co.*, 685 S.W.2d at 635.

 The present record contains material factual disputes concerning whether the intersection was dangerous, whether the county had actual or constructive notice of the intersection's condition, and whether the condition of Mr. Harley's brakes caused the accident. In light of these factual disputes, we cannot concur with the trial court's conclusion that Mr. Harley's brakes were either the sole proximate cause or the superseding, intervening cause of the collision as a matter of law. These causal questions should be decided by the fact-finder.

### V.

We vacate the summary judgment for Putnam County and remand the case for further proceedings. We also tax the costs of this appeal to Putnam County.

LEWIS, J., concurs.

HENRY F. TODD, P.J., M.S., concurs in separate Opinion.

TODD, Presiding Judge, Middle Section, concurring.

Concurring in the result reached, I respectfully assert my conviction that, when a Defendant moves for summary judgment the burden of producing evidence to support evidence of every aspect of his case does not pass to the Plaintiff until Defendant has produced or pointed out evidence to negative every aspect of the case. The burden shifts to the Plaintiff only to contradict the evidence offered or pointed out by Defendant.

Of course, evidence that Plaintiff cannot prove one or more aspects of his case does shift the burden to Plaintiff to show how he can prove such aspects, but proof of such inability must come from Plaintiff's admissions or equally substantive evidence. As

stated in *Byrd v. Hall*, (Tenn.1995), 847 SW2d 208, 213, "a conclusory assertion that the non-moving party has no evidence is clearly insufficient."