# In re ARCHDIOCESE OF MILWAUKEE, Debtor.

## No. 11–20059–svk.

United States Bankruptcy Court, E.D. Wisconsin.

Jan. 31, 2013.

Bruce G. Arnold, Daryl L. Diesing, Michael E. Gosman, Lindsey M. Johnson, Francis H. LoCoco, Whyte Hirschboeck Dudek, S.C., Mark L. Metz, Leverson & Metz, S.C., Milwaukee, WI, for Debtor.

## MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM NO. 89 FILED BY CLAIM-ANT ROY EBERT

SUSAN V. KELLEY, Bankruptcy Judge.

The Archdiocese of Milwaukee (the "Debtor") objected to Proof of Claim number 89 (the "Claim") filed by Roy Ebert (the "Claimant").[1] The Debtor moved for summary judgment, arguing that the Claim should be disallowed as time-barred under Wisconsin's statute of limitations. The Court held hearings on December 13, 2012 and January 24, 2013. After consideration of the written submissions and argument of counsel, the Court issued an oral ruling at the January 24, 2013 hearing, which is memorialized by this decision.

## I. BACKGROUND AND FACTS

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 4, 2011. On September 15, 2011, the Claimant filed the Claim, alleging that Father George Nuedling sexually assaulted him in 1963 when the Claimant was an altar boy and fourth grade student at St. Lawrence Catholic School in Milwaukee. In an attachment to the Claim, the Claimant describes reporting Nuedling's assault to the Debtor in 2002.

In support of its summary judgment motion, the Debtor filed the affidavit of Attorney Francis LoCoco and appended copies of correspondence from the Claim-

ant and his attorney to the Debtor. The Claimant sent an e-mail on April 28, 2002, in which he stated that it was "well known among the boys, even in the church rectory, not to stand with your back to this priest...." The e-mail describes Nuedling's violent attack on the Claimant in the school restroom and asks: "I just wonder how many other little boys this evil man harmed?" Barbara Reinke, director of the Debtor's Project Benjamin, responded to the Claimant's e-mail and confirmed that Nuedling was known to the Debtor as an offender, and was confronted before his death.

On January 17, 2003, the Claimant's attorney, Daniel Stevens, wrote a letter to Barbara Reinke. The letter states that it is well-known that Nuedling assaulted children since the 1960s for over thirty years. The letter accuses the Debtor of responding to the reports of abuse by reassigning Nuedling to another parish, "exposing innocent victims to a monster." The letter concludes: "I would appreciate a response from you within 10 days from the date of this letter, or I will advise Mr. Ebert to pursue other avenues." On February 5, 2003, the Debtor's attorney, Matthew Flynn, responded: "The Archdiocese appreciates your reporting the matters set out in your letter. However you seem to imply that the Archdiocese knew in the 1960s that Fr. Nuedling was engaged in this kind of conduct. In fact, the Archdiocese did not have knowledge of these kinds of allegations against Fr. Nuedling at that time." The response also invited Attorney Stevens to contact Attorney Flynn "about what you are requesting for Mr. Ebert," and asserted that "any litigation claims that you may be implying would be barred

---

1. The Claimant did not file his claim under seal as permitted by the Order Authorizing Special Confidentiality Procedures to Protect Abuse Survivors. (Order, Docket No. 327).

by the statute of limitations." Attorney Flynn cited two Wisconsin Supreme Court decisions as authority for his statement about the statute of limitations.

The Debtor urges disallowance of the Claim under 11 U.S.C. § 502(b)(1) because the Claim is "unenforceable against the debtor ... under any agreement or applicable law." The applicable law is Wisconsin's six-year statute of limitations for fraud. The Claimant responds that equitable estoppel bars the Debtor from raising the statute of limitations.

## II. JURISDICTION

■ Ruling on objections to proofs of claim falls within the core jurisdiction of the bankruptcy court under 28 U.S.C. §§ 1334 and 157(b)(2)(B). Unlike the entry of a final order on a State law counterclaim, allowance of claims was not deemed unconstitutional in *Stern v. Marshall,* ⸺ U.S. ⸺, 131 S.Ct. 2594, 2614, 180 L.Ed.2d 475 (2011). In *Stern,* the Supreme Court reaffirmed that bankruptcy courts have the authority to restructure the debtor-creditor relationship and determine "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.*

■ Under 28 U.S.C. § 157(b)(5), personal injury tort claims must be tried in the district court. However, in *Stern,* the Supreme Court confirmed that this provision is waivable. *Stern,* 131 S.Ct. at 2608. Further, an objection to the legal validity of a personal injury tort claim, such as the Debtor's statute of limitations objection in this case, does not fall within the personal injury exception to the core jurisdiction of the Bankruptcy Court. *In re UAL Corp.,* 310 B.R. 373 (Bankr.N.D.Ill.2004). Finally, a claim that the Debtor defrauded the Claimant, as is made here, is not necessarily a personal injury tort claim.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is governed by Rule 7056 of the Federal Rules of Bankruptcy Procedure, incorporating Rule 56 of the Federal Rules of Civil Procedure, and should be granted if the Debtor can establish that there is no genuine issue of material fact and that the Debtor is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When analyzing a summary judgment motion in a similar context, the Seventh Circuit Court of Appeals explained: "[I]t follows that summary judgment is appropriate only if (1) the statute of limitations has run, thereby barring plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued and the application of the statute to plaintiff's claim which may be resolved in plaintiff's favor." *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1219 (7th Cir.1984).

### B. The Claimant's Negligence–Based Claims are Barred by the Statute of Limitations

■ The Wisconsin statute of limitations for negligence is three years from when the claim accrues. Wis. Stat. § 893.54(1) (2009–10). It is unclear whether the Claimant is making any negligence-based claims. To the extent he is, those claims relate back to the date of his abuse in 1963, and the statute of limitations has expired. *See In re Archdiocese of Milwaukee,* 470 B.R. 495 (Bankr.E.D.Wis. 2012) (negligence claims filed by Claimants

A–12 and A–13 were barred by the statute of limitations, citing *John Doe 1 v. Archdiocese of Milwaukee,* 2007 WI 95, 303 Wis.2d 34, 734 N.W.2d 827).

## C. The Claimant's Fraud–Based Claims are Barred by the Statute of Limitations

 The statute of limitations for fraud is six years from when the claim accrues. Wis. Stat. § 893.93(1)(b). "The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." *Id.* In *John Doe 1,* the Wisconsin Supreme Court stated that the statute of limitations starts to run "[w]hen the information brought home to the aggrieved party is such as to indicate where the facts constituting the fraud can be effectually discovered upon diligent inquiry." *John Doe 1,* ¶ 51 (quoting *Koehler v. Haechler,* 27 Wis.2d 275, 278, 133 N.W.2d 730 (1965)).

 In this case, from 2002 or 2003 at the latest, the information brought home to the Claimant indisputably included knowledge of the Debtor's alleged fraud. The purported wrong is the Debtor's alleged misrepresentation that it did not know Nuedling's history of abusing children at St. Rita's parish before transferring him to St. Lawrence parish where he abused the Claimant. *See John Doe 1,* 2007 WI 95, ¶ 50, 303 Wis.2d 34, 734 N.W.2d 827. Stated another way, the Debtor allegedly defrauded the Claimant by covering up Nuedling's monstrous conduct and transferring him from St. Rita's to St. Lawrence. In 2002, the Claimant contacted the Debtor, reported his abuse and stated that it was well-known that Nuedling had abused other children. The Debtor responded that Nuedling was a confirmed abuser who had been confronted before his death. Then, in 2003, the Claimant's attorney accused the Debtor of transferring Nuedling, a known child abuser, to other parishes. Attorney Stevens' letter can only be characterized as a demand letter for the Debtor's alleged fraud in concealing and transferring a sexual predator. In making these accusations, the Claimant and his attorney demonstrated that they suspected the Debtor's fraudulent conduct. The Debtor replied with Attorney Flynn's letter, denying that the Debtor knew about Nuedling's abusive conduct in the 1960s. Given the contents of the correspondence, the Court concludes that the Claimant had information in 2002 and 2003 that the Debtor may have engaged in a cover-up of the accusations that Nuedling had abused children. Rather than investigating further or filing suit, the Claimant dropped the matter. By the time the Debtor filed bankruptcy in 2011, the six-year statute of limitations had expired.

 The Claimant urges the Court to apply the doctrine of equitable estoppel to prevent the Debtor from raising the statute of limitations defense. The Wisconsin Supreme Court has recognized that "in a proper case, a defendant may be estopped from asserting the statute of limitations." *Hester v. Williams,* 117 Wis.2d 634, 644, 345 N.W.2d 426 (1984). Estoppel will apply where the conduct and representations of the party asserting the statute of limitations "were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." *State ex rel. Susedik v. Knutson,* 52 Wis.2d 593, 598, 191 N.W.2d 23 (1971). Actual fraud is not required to invoke equitable estoppel, but the party asserting the statute of limitations must have been guilty of fraudulent or inequitable conduct—distinct from the claimed fraud itself—that induced the other party to delay filing the action until it was too late. *Id.* The Claimant

bears the burden of proof of estoppel by clear and convincing evidence, and the Court cannot rely on mere inference or conjecture. *Gonzalez v. Teskey,* 160 Wis.2d 1, 13, 465 N.W.2d 525 (Ct.App. 1990).

 According to the Claimant, Attorney Flynn's statement that the Debtor did not know about the allegations against Nuedling in the 1960s was a misrepresentation, and Attorney Stevens relied on that misrepresentation in refraining from commencing suit against the Debtor. This alleged misconduct is not truly distinct from the claimed fraud itself. *See Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1990) (by arguing that defendant's conduct was a ruse to conceal the plan to fire him because of his age, plaintiff merged the substantive wrong with the tolling doctrine).

Even assuming that Attorney Flynn's statement is not part and parcel of the original misconduct, the Claimant's accusation that Attorney Flynn misrepresented the Debtor's knowledge during the 1960s is mere speculation. The record includes newspaper accounts that the earliest reports about Nuedling abusing children at St. Rita's occurred in 1986. The Claimant questions the Debtor's motive for transferring Nuedling from St. Rita's to St. Lawrence, and he requests time to conduct discovery into the accuracy of Attorney Flynn's statement. But the time to investigate that assertion was in 2003, not in 2013. Moreover, earlier in this bankruptcy case, the Debtor produced under seal and made available to the Claimant's counsel scores of documents about Nuedling and other abusive priests. None of these documents shows that the Debtor received a report about Neudling in the 1960s. The Claimant's allegation of unproduced "secret files" that would contradict Attorney Flynn's statement does not rise to the level of clear and convincing proof that the Debtor wrongfully misled the Claimant into abandoning his investigation into the Debtor's alleged fraud.

The Claimant also alleges that the Debtor's state of mind when it transferred Nuedling to St. Lawrence is an issue that cannot be determined on summary judgment. If the Claimant had filed suit within the limitations period, he would have a point. But the issue here is whether the Claimant had enough information brought home to him about the Debtor's alleged fraud, and if so, whether the Debtor engaged in misconduct to induce the Claimant not to sue. The Debtor's intent in transferring Nuedling in the 1960s does not factor into this decision.

In *Johnson v. Johnson,* 179 Wis.2d 574, 583, 508 N.W.2d 19 (Ct.App.1993), an insurer told the plaintiff he had "plenty of time" to sue and continued to deal with the plaintiff up to and beyond the statute of limitations. The court found that the insurer's conduct was neither fraudulent nor inequitable and declined to equitably estop the insurer from raising the statute of limitations defense. And in *Gonzalez v. Teskey, supra,* the court did not apply equitable estoppel when the defendant denied liability and never suggested that the plaintiff was free to ignore the statute of limitations. Here, the Debtor told the Claimant the statute of limitations had expired, but the Debtor would make therapy and other services available if the Claimant wanted them. The Claimant's attorney was free to reject the Debtor's interpretation of the Wisconsin Supreme Court decisions cited in Attorney Flynn's letter. He could have requested more information about what the Debtor knew about Nuedling and when the Debtor knew it. He could have rejected the Debtor's explanation and sued. Nothing in the Debtor's conduct or in its attorney's letter rises to

clear and convincing proof that the Debtor's misconduct induced the Claimant to delay his investigation or forego his lawsuit against the Debtor.

The Court feels a deep sympathy for the abuse suffered by the Claimant and the adverse consequences he has endured through no fault of his own. But, under Wisconsin law, the Court must enforce the statute of limitations if the Claimant had enough information brought home to him about the Debtor's fraud that would lead a reasonable person to investigate. Here, the Claimant's suspicions about the Debtor's conduct in covering up and transferring Nuedling led the Claimant's attorney to demand immediate answers from the Debtor or he would "explore other avenues." Unlike other claimants in this case who filed affidavits stating that they did not know about the Debtor's alleged fraud until recently, the record shows that the Claimant suspected in 2003 at the latest that the Debtor covered up Nuedling's atrocious activities. Under these circumstances, the six-year statute of limitations for the Claimant's fraud claim expired prior to the Debtor's bankruptcy petition.

## IV. CONCLUSION

For the foregoing reasons and those stated on the record at the hearings held on the objection, the Debtor's motion for summary judgment on Roy Ebert's proof of claim is granted, the Debtor's objection is sustained, and the Claim is disallowed. The Court will issue a separate Order.