IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 14, 2005 Session

## ANNETTE HALE v. LINCOLN COUNTY, TENNESSEE, ET AL.

**Direct Appeal from the Circuit Court for Lincoln County**
**No. C0200298      Franklin L. Russell, Judge**

_____

**No. M2004-01963-COA-R3-CV - Filed December 9, 2005**

_____

In this appeal we are called upon to review a trial court's grant of summary judgment to a county in a lawsuit filed by an injured motorist pursuant to section 29-20-203 of the Tennessee Governmental Tort Liability Act. The trial court concluded that the plaintiff was unable to prove, as a matter of law, that the county had actual and/or constructive notice of the condition of the roadway at the time of the plaintiff's accident. The plaintiff appealed to this Court. We hold that the plaintiff established that genuine issues of material fact exist as to whether the condition of the roadway constituted a defective, unsafe, or dangerous condition, and whether the county had actual and/or constructive notice of such condition. Accordingly, we reverse the decision of the trial court and remand this case for further proceedings.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Melanie Lepp, Murfreesboro, TN, for Appellant

Jeffrey M. Beemer, John Paul Nefflen, Nashville, TN, for Appellees

# OPINION

## I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

During the early morning hours of December 25, 2001, Annette Hale ("Hale" or "Appellant") was a passenger in her own vehicle being driven by a friend. Hale and her friend were traveling along Brighton Road in Lincoln County, Tennessee ("County" or "Appellee") when they encountered a patch of "black ice." The driver lost control of the vehicle, left the roadway, and struck a tree. As a result of the accident, Hale suffered injuries to her arm, knee, and ankle, which required surgery to repair.

At the time of the accident, the temperature had dropped to below freezing. Sergeant Johnny Sanders ("Sergeant Sanders") of the Lincoln County Sheriff's Department was the first emergency responder to arrive at the scene of the accident. He noted the existence of the "black ice," describing it as "the same color as the pavement." Sergeant Sanders had his dispatcher summon a representative of the Lincoln County Highway Department to the scene to erect barricades to prevent another accident. Deputy Anthony Nichols ("Deputy Nichols") of the Lincoln County Sheriff's Department joined Sergeant Sanders at the scene a short time later, and he also noted the existence of ice on the roadway. Trooper Jerry King ("Trooper King") of the Tennessee Highway Patrol subsequently joined Sergeant Sanders and Deputy Nichols at the accident scene. He too noted that the surface of the roadway was covered with ice. During the course of his investigation, Trooper King determined that a nearby privately owned pond overflowed causing water to enter the roadway where it froze.

Donny Ray Hudson ("Mr. Hudson"), Superintendent of the Lincoln County Highway Department, responded to the scene pursuant to Sergeant Sanders's request. According to Mr. Hudson, the area received a "big rain" around Christmas of 2001. He determined that the water, which gathered in the pond during the "big rain," broke through the side of the pond and flowed onto the roadway where it froze. According to Hale, Mr. Hudson introduced himself to her at the accident scene and told her that he was aware of a problem with water flowing across the road, that a work order had been issued to fix the road, and that the road should have been repaired a long time before the accident. Hale went back to the scene of the accident the following day and noted that the County had "repaired the roadway."

On December 23, 2002, Hale filed a complaint against the County in the Circuit Court of Lincoln County pursuant to the Tennessee Governmental Tort Liability Act, codified at section 29-20-101 *et seq.* of the Tennessee Code. Specifically, she alleged that the County was subject to suit pursuant to section 29-20-203 of the Tennessee Code for the injuries she sustained as the result of an allegedly defective, unsafe, or dangerous street. On March 15, 2004, after the parties conducted discovery in this case, the County filed a motion for summary judgment. Therein, the County primarily argued that Hale was unable to prove that the County had actual and/or constructive

knowledge that "black ice" had formed on Brighton Road prior to the accident and that the sole proximate cause of the accident was the water escaping from the privately owned pond and freezing on the roadway. In support of its motion, the County submitted the deposition testimony of Hale, Mr. Hudson, Trooper King, Deputy Nichols, and Sergeant Sanders. The County also submitted Mr. Hudson's affidavit, wherein he stated that he has never received a complaint of water overflowing from a privately owned pond and freezing on Brighton Road.

Hale responded to the County's motion by submitting the affidavits of several individuals. First, she submitted the affidavit of James A. Hillis ("Mr. Hillis"), the owner of the property where her vehicle came to rest on the morning of the accident. Mr. Hillis made the following statements in his affidavit:

> 3. For an extended period of time there had been a dangerous problem related to standing water in the roadway that is the subject of this accident. Water would often times stand in the roadway due to an overflowing of a pond nearby.
> 4. It had not rained the day of the accident.
> 5. Since water would stand in the roadway, when it was cold enough to freeze, there would be an extended stay of a patch of ice in the subject area.
> 6. In my opinion, Ms. Hale would not have been able to avoid the accident due to these conditions.
> 7. It was my understanding that the problem was to be remedied long before Ms. Hale's accident.
> 8. It was my understanding that the County of Lincoln was aware of this dangerous problem.
> 9. The problem was addressed and remedied the day following Ms. Hale's accident.

Hale also submitted her own affidavit recounting Mr. Hudson's statements to her following the accident, and she noted the County's actions in fixing the road the day after her accident. Further, Hale submitted the affidavit of Noel Evans, an employee of the Tennessee Department of Transportation, to demonstrate that the County was responsible for operating and maintaining Brighton Road. Finally, Hale submitted a copy of the County's responses to her requests for admissions, wherein the County stated as follows: "The Defendants admit that water flowed over the subject road on rare occasions after heavy rains. The Defendants deny that there was any defective unsafe, or dangerous condition where the Plaintiff's accident occurred."

On June 4, 2004, the trial court entered an order granting the County's motion for summary judgment, finding as follows:

> 1. The opinion of James A. Hillis that there is a dangerous

condition on Brighton Road . . . is inadmissible as Mr. Hillis is not an expert and is incompetent to provide expert testimony;

2. Mr. Hillis' statement that it was his understanding that a problem on Brighton Road was to be remedied long before the Plaintiff's accident . . . is inadmissible hearsay;

3. Mr. Hillis' statement that it is his understanding that the County of Lincoln was aware of a dangerous problem on Brighton Road . . . is inadmissible hearsay;

4. Evidence of steps taken by Lincoln County following the Plaintiff's accident in an attempt to prevent future accidents is inadmissible under Tenn.R.Evid. 407 because such acts constitute subsequent remedial measures;

5. There is no evidence that the Defendant, Lincoln County, had actual or constructive notice that on or anytime before the night of December 25, 2001, water had broken through the side of the privately owned pond, flowed over Brighton Road, and, due to the extreme weather conditions, formed black ice on Brighton Road;

6. There is no evidence that the Defendant, Lincoln County, had actual or constructive notice that on or anytime before the night of December 25, 2001, black ice had formed on Brighton Road and created a defective, dangerous, or unsafe condition;

7. The Defendant, Lincoln County's Motion for Summary Judgment is hereby GRANTED . . . .

Thereafter, Hale filed a timely notice of appeal to this Court presenting the following issue for review: whether the trial court erred in granting summary judgment to the County based on a finding that the County did not have actual and/or constructive notice of the defective, unsafe, or dangerous condition of the roadway in question.

## II.
### STANDARD OF REVIEW

"[T]he summary judgment process is designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no genuine dispute regarding material facts." *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993) (citations omitted). A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04 (2005). "The moving party has the burden of proving that its motion satisfies these requirements." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citing *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991)). "Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Byrd*, 847 S.W.2d at 211

(citations omitted). In that regard, the party opposing the motion "may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06 (2005).

The standards governing a court's assessment of the evidence when evaluating a motion for summary judgment are well established. *Bain*, 936 S.W.2d at 622; *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Courts must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Byrd*, 847 S.W.2d at 210–11. In doing so, courts are not permitted to "weigh" the evidence or evaluate the credibility of the witnesses. *Id*. at 216. Courts should grant a motion for summary judgment only when the facts and the inferences drawn from those facts would permit a reasonable person to reach only one conclusion. *Bain*, 936 S.W.2d at 622 (citation omitted); *Carvell*, 900 S.W.2d at 26 (citation omitted).

The standard of review which guides this Court when evaluating a trial court's grant of summary judgment to a party is likewise well established. *Bain*, 936 S.W.2d at 622; *Carvell*, 900 S.W.2d at 26. "Our task on appeal is to review the record to determine whether the requirements for granting summary judgment have been met." *Church v. Perales*, 39 S.W.3d 149, 157 (Tenn. Ct. App. 2000); *see also Burgess v. Harley*, 934 S.W.2d 58, 62 (Tenn. Ct. App. 1996). To that end, we are guided by the same standards utilized by the trial court in evaluating the motion for summary judgment. *Prince v. Saint Thomas Hosp.*, 945 S.W.2d 731, 733 (Tenn. Ct. App. 1996) (citing *Clifton v. Bass*, 908 S.W.2d 205, 208 (Tenn. Ct. App. 1995)). Accordingly, we review a trial court's grant of summary judgment to a party "*de novo* without any presumption that the trial court's conclusions were correct." *Webber v. State Farm. Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *see also Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000).

## III.
### DISCUSSION

The Tennessee Constitution provides as follows: "Suits may be brought against the state in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. "The passage of the Tennessee Governmental Tort Liability Act in January 1974 was therefore an act of grace through which the legislature provided general immunity from tort liability to all governmental entities, removing it, however, in limited and specified instances." *Kirby v. Macon County*, 892 S.W.2d 403, 406 (Tenn. 1994). That portion of the Act providing for general immunity from tort liability provides that,

> [e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

-5-

Tenn. Code Ann. § 29-20-201(a) (2003). The legislature provided for the removal of immunity from suit in the following circumstance:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.
> (b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved . . . .

Tenn. Code Ann. § 29-20-203 (2003); *see also Burgess v. Harley*, 934 S.W.2d 58, 63 (Tenn. Ct. App. 1996) (setting forth the three essential elements the plaintiff is required to prove in order to establish a cause of action under the statute). A "governmental entity" is defined to include the counties of this state. Tenn. Code Ann. § 29-20-102(3)(A) (2003). The parties concede that the County owned and controlled Brighton Road. Further, the parties do not dispute that Hale sustained an "injury" from the accident, as that term is defined in the Act. *See* Tenn. Code Ann. § 29-20-102(4) (2003).

The party moving for summary judgment may prove that there are no genuine issues of material fact and that it is, therefore, entitled to judgment as a matter of law by demonstrating that the non-moving party is unable to satisfy an essential element of his or her claim. *Byrd v. Hall*, 847 S.W.2d 208, 216 n.5 (Tenn. 1993); *Davis v. Campbell*, 48 S.W.3d 741, 745–46 (Tenn. Ct. App. 2001) (citations omitted). The two statutory elements we must consider in disposing of this appeal are (1) whether Hale is able to prove that the portion of Brighton Road at issue constituted a "defective, unsafe, or dangerous condition" as a matter of law, and (2) whether Hale is able to prove that the County had "constructive and/or actual notice . . . of such condition." *See* Tenn. Code Ann. § 29-20-203 (2003).

On appeal, Hale contends that it is undisputed that the area of the road where the accident occurred was unsafe or dangerous. In support of this assertion, she relies on Mr. Hudson's admission in his deposition testimony that ice on a road creates a dangerous condition. The County argues that we should affirm the trial court's grant of summary judgment in favor of the County because the allegedly dangerous condition on Brighton Road was not proximately caused by any act of the County, but by the owner of the privately owned pond adjacent to the roadway. The trial court did not address this element of Hale's claim in its order granting summary judgment to the County, instead choosing to find that Hale was unable to prove the notice element of her claim.

"Whether a particular site is defective, unsafe, or dangerous for purposes of waiving governmental immunity under § 29-20-203 is a question of fact." *Helton v. Knox County*, 922 S.W.2d 877, 882 (Tenn. 1996). "In determining the liability of municipalities for dangerous conditions on public streets, ordinary principles of negligence apply." *Bryant v. Jefferson City*, 701

S.W.2d 626, 627 (Tenn. Ct. App. 1985) (citing **Metro. Gov't of Nashville v. Counts**, 541 S.W.2d 133 (Tenn. 1976)). It is true that "no exception to sovereign immunity exists where the local government's duty to act was discretionary or where the activity proximately causing the injury was that of a nongovernmental entity." **Britton v. Claiborne County**, 898 S.W.2d 220, 223 (Tenn. Ct. App. 1994). Regarding the proximate cause of an injury, our supreme court has stated as follows:

> The general rule is that what is the proximate cause of an injury is a question for the jury; the court instructing them as to what the law requires to constitute it, and the jury applying the law to the facts. But whether the question is one to be determined by the jury depends on the facts of each case. Thus where the facts of the particular case are controverted, and are of such a character that different minds might reasonably draw different conclusions therefrom, a question of facts is presented properly determinable by the jury.

**Fairbanks, Morse & Co. v. Gambill**, 222 S.W. 5, 7 (1919).

In a previous case addressing a trial court's grant of summary judgment against a plaintiff's claim based on section 29-20-203 of the Tennessee Code, we stated as follows:

> In order to be a proximate cause of an injury, a negligent act or omission must have been a substantial factor in bringing about the injury. *Boling v. Tennessee State Bank*, 890 S.W.2d 32, 36 (Tenn. 1994); *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991). An injury may be proximately caused by more than one negligent act or omission. *Kelley v. Johnson*, 796 S.W.2d 155, 159 (Tenn. Ct. App. 1990); *Stokes v. Leung*, 651 S.W.2d 704, 708 (Tenn. Ct. App. 1982). Thus, a negligent act or omission need not be the sole cause of an injury to be a proximate cause. *McClenahan v. Cooley*, 806 S.W.2d at 775; *Lancaster v. Montesi*, 216 Tenn. 50, 57, 390 S.W.2d 217, 221 (1965). Each person whose negligence is a proximate cause of an injury may be independently liable for the injury. *McClenahan v. Cooley*[,] 806 S.W.2d at 775.
>
> Foreseeability is an important consideration in determining whether an act or omission is a legal cause of an injury. An act or omission will not be considered a proximate cause of an injury if a reasonable person could not have foreseen or anticipated the injury. *McClenahan v. Cooley*, 806 S.W.2d at 775. By the same token, a later negligent act will not be considered a superseding, intervening cause of an injury if it a was reasonably foreseeable consequence of an earlier negligent act. *Speaker v. Cates Co.*, 879 S.W.2d 811, 815 (Tenn. 1994); *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn.

1992); *Evridge v. American Honda Motor Co.*, 685 S.W.2d 632, 635 (Tenn. 1985); *Goodermote v. State*, 856 S.W.2d at 722.

Causation questions are fact-sensitive and require that the evidence be reviewed in light of logic, common sense, policy, and precedent. *Wyatt v. Winnebago Indus., Inc.*, 566 S.W.2d 276, 280 (Tenn.Ct.App.1977). These questions are normally left to the fact-finder unless the undisputed facts and the inferences drawn from the facts permit a reasonable person to draw but one conclusion. *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994); *McClenahan v. Cooley*, 806 S.W.2d at 775; *Evridge v. American Honda Motor Co.*, 685 S.W.2d at 635.

*Burgess v. Harley*, 934 S.W.2d 58, 68–69 (Tenn. Ct. App. 1996). Based on the facts in this case, *if the County had notice* that water, from whatever source, collected on Brighton Road due to a problem with the roadway, then reasonable minds could differ as to whether the County's act of allowing this condition to exist was the proximate cause of Hale's injuries under the circumstances of this case. *See Jensen v. Tracy City*, No. M2002-02019-COA-R3-CV, 2003 Tenn. App. LEXIS 522, at \*4–5 (Tenn. Ct. App. July 29, 2003) (reversing the trial court's grant of summary judgment to the city by holding that a disputed issue of fact remained as to whether the city's act of allowing gravel to accumulate on the pavement at the bottom of a hill constituted a dangerous condition); *Sears v. Metro. Nashville Airport Auth.*, No. 01A01-9703-CV-00138, 1999 Tenn. App. LEXIS 494, at \*18 (Tenn. Ct. App. July 27, 1999) ("[I]n negligence cases, the jury is ordinarily left to decide whether a condition is dangerous when some competent evidence of hazard exists."). "Therefore, if we assume for purposes of review that the road is defective, unsafe or dangerous, summary judgment can be granted only if the plaintiffs have failed to create an issue of fact as to whether the defendant had actual or constructive knowledge of the alleged defects in the roadway." *Jones v. Tipton County*, No. 02A01-9704-CV-00090, 1997 Tenn. App. LEXIS 697, at \*8 (Tenn. Ct. App. Oct. 16, 1997).

We now turn our attention to the determinative issue in this case: whether Hale is able to prove, as a matter of law, that the County had actual and/or constructive notice of the condition of Brighton Road at the time of her accident.[1] Hale argues that summary judgment is inappropriate in

---

[1] Both parties make reference to our decision in *Glover v. Hardeman County*, 713 S.W.2d 73, 76 (Tenn. Ct. App. 1985), wherein this Court stated as follows:

Under the proof in this case, however, a more pertinent decision is *Poole v. Jackson*, (1893) 93 Tenn. 62, 23 S.W. 57, wherein a city had improperly installed a defective plank sidewalk which resulted in injury to the plaintiff. There the court held that if the governmental entity originally constructed the sidewalk in a defective condition, and it remained in that condition from the time it was first put down until the plaintiff was injured as a result thereof, *then no notice, actual or constructive, was necessary to the defendant; for, if the sidewalk was defectively constructed, the defendant would be charged with notice from the time of the*

(continued...)

-8-

this case because she presented sufficient evidence to create a genuine issue of fact as to whether the County had actual and/or constructive notice of the condition.

Turning to constructive notice, our supreme court, in applying the notice provision in section 29-20-203 of the Tennessee Code, has defined this term as follows:

> "Constructive notice" is "information or knowledge of a fact *imputed by law* to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it."  Black's Law Dictionary, 1062 (6th ed. 1990).

*Kirby v. Macon County*, 892 S.W.2d 403, 409 (Tenn. 1994) (emphasis added).  Regarding constructive notice, the only proof put forth by Hale in opposition to the County's motion for summary judgment was Mr. Hillis's affidavit, which provides as follows:

> 3.      For an extended period of time there had been a dangerous problem related to standing water in the roadway that is the subject of this accident.  Water would often times stand in the roadway due to an overflowing of a pond nearby.
>
> . . . .
>
> 8.      It is also *my understanding* that the County of Lincoln was aware of this dangerous problem.

(emphasis added).  These statements alone are not sufficient, as a matter of law, to warrant the imputation of notice of the condition at issue on the County.  "Simple statements such as defendant 'should have known,' or that the [condition] 'had been there so long,' are not sufficient *specific facts* to overcome a motion for summary judgment." *Jones*, 1997 Tenn. App. LEXIS 697, at *9; *see also Davis v. Campbell*, 48 S.W.3d 741, 747 (Tenn. Ct. App. 2001) ("Mere conclusory generalizations will not create a material factual dispute sufficient to prevent the trial court from granting a summary judgment.  The nonmoving party must convince the trial court that there are sufficient factual disputes to warrant a trial."); Tenn. R. Civ. P. 56.06 (2005) (requiring the non-movant to "set forth *specific facts* showing that there is a genuine issue for trial").

---

[1](...continued)
*original defective construction.*

(emphasis added).  We need not address whether the notice requirement of section 29-20-203 of the Tennessee Code is somehow bypassed in this case.  There is no proof in the record before this Court to indicate that the County constructed the road in question or that the road was defective when originally constructed.  Accordingly, any arguments in this regard are without merit.

In previous cases, the appellate courts of this state have set forth those instances when imputing notice to a governmental entity is generally appropriate, none of which are present in this case. *See*, *e.g.*, *Crowell v. Hackett*, No. W1999-02747-COA-R3-CV, 2000 Tenn. App. LEXIS 317, at *9 (Tenn. Ct. App. 2000) (noting that there was no proof of constructive notice where there had been no prior accidents at a particular location); *Sears v. Metro. Nashville Airport Auth.*, No. 01A01-9703-CV-00138, 1999 Tenn. App. LEXIS 494, at *15–16 (Tenn. Ct. App. July 27, 1999) ("[C]onstructive notice can be proved by demonstrating that the condition existed for a sufficiently long length of time that the owner or occupier, or their agent, in the exercise of reasonable care, should have become aware of the condition."); *Dunlap v. Smyrna/Rutherford County Airport Auth.*, No. 01A01-9610-CV-00491, 1997 Tenn. App. LEXIS 596, at *12–13 (Tenn. Ct. App. Aug. 29, 1997) (finding that the record contained no evidence of constructive notice on the part of the defendant when it was shown that the defendant never received any complaints or requests for maintenance of the condition at issue); *Kirby v. Macon County*, 892 S.W.2d 403, 410 (Tenn. 1994) (ruling that a county did not have constructive notice when no prior accidents at a particular location on the roadway at issue had been reported, and there was no proof that anyone had notified the county of the problem at issue). Accordingly, Hale is unable to establish that the County had constructive notice of the condition of Brighton Road at the time of her accident.

The crucial area of contention between the parties is whether the County had actual notice of the condition which caused Hale's injuries. Our supreme court has defined actual notice, as that term is used in section 29-20-203 of the Tennessee Code, as follows:

> "Actual notice" has been defined by our Court as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn. 1950) (quoting 39 American Jurisprudence, Section 4, page 234).

*Kirby*, 892 S.W.2d at 409. To support her contention that the County had actual notice, Hale relied on the deposition testimony of Mr. Hudson, the County's responses to her requests for admissions, and her own affidavit.

In its response to Hale's request for admissions, the County provided the following answer: "The Defendants admit that water flowed over the subject road on rare occasions after very heavy rains. The Defendants deny that there was any defective, unsafe, or dangerous condition where the Plaintiff's accident occurred." In his deposition, Mr. Hudson testified as follows:

> Q. And if I understand correctly also, water had flowed over that road on occasions prior to Christmas Eve and Christmas, 2001. Am I correct in that?
> A. Not unless it was an awful big rain.

Q. Well, when you say an awful big rain, what kind of rain do you call awful big?

A. I would say 4 or 5 inches in 24 hours.

Q. All right. Well, had you had that kind of rain at Christmas?

A. Yes, sir.

Q. All right. So, this was a big rain that you had right then?

A. Big rain.

. . . .

Q. Okay. And if, as you acknowledge in your request for admissions, when you have heavy rains such as you had that night it can overflow, you know that water will freeze if it gets cold enough?

A. Right.

Q. And, so, this night it was very cold, was it not?

A. Very cold.

Hale argues that these statements alone demonstrate that the County admits that it had actual knowledge that water flowed over Brighton Road and, when it got cold enough, it would freeze. We take these facts offered by Hale to be true. ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993). However, they do not establish, as a matter of law, that the County had actual notice of a dangerous condition which caused Hale's injuries.

In the affidavit filed by Mr. Hudson in support of the County's motion for summary judgment, he offered the following statements:

> 7. In the 22 years that I have served as superintendent of the Lincoln County Highway Department, I have never received a complaint or have known that water flowed over Brighton Road and caused a defective, unsafe, or dangerous condition, other than the Plaintiff's accident.
> 8. In the 22 years that I have served as superintendent of the Lincoln County Highway Department, I have never received a complaint or have known of ice forming on Brighton Road and causing a defective, unsafe, or dangerous condition, other than the Plaintiff's accident.

Further, Mr. Hudson offered the following testimony during his deposition:

Q. Okay. And prior to this, had you received complaints about this water —

A. No, sir.

Q.      — overflowing on there?
A.      No, sir.

        . . . .

A.      I've never known of water — I have known water to stand
        there when a big rain until it got run off.  But I never knowed
        of water flowing on the road.

        . . . .

Q.      Well, when the water had overflowed and been on the
        highway in the past —
A.      It never had done this in the past.

        . . . .

Q.      All right.  Why did you not do anything prior to this — since
        you knew that water would stand in that area at times, why
        did you —
A.      I ain't talking standing, you know, water up like this.  It
        would just be a little water on the road from the rain.  But it
        would run off in just a few minutes.  Until the pond run over
        there never was no water on the road.
Q.      So, you are saying that never in the past had there ever been
        any water —
A.      Never been a complaint that I have ever heard of.
Q.      Never been a complaint that you had ever heard of?
A.      Right.

Hale seeks to persuade this Court to adopt the premise that knowledge of the scientific fact that water
left standing on a roadway following a heavy rain will freeze under certain environmental conditions
in and of itself constitutes actual notice of a dangerous condition.  If this were the standard of actual
notice applied to cases of this nature, then every roadway in this state would become a dangerous
condition by virtue of the fact that it rained and the temperature dropped to below freezing.  As a
result, the governmental entities controlling those roadways would be charged with actual notice of
that condition.  We decline to accept such an absurd result.  If this were the only proof Hale
presented of the County's actual notice, we would be inclined to hold that the County retained its
immunity from suit in this case.

        However, our inquiry cannot end at this point.  Hale presented additional facts in response
to the County's motion which she contends create a genuine issue of material fact regarding the

-12-

County's actual notice of the condition of the roadway. In her affidavit, Hale asserted that the following statements were made by Mr. Hudson following the accident:

> 3. Mr. Hudson came up to my vehicle and told me the following:
>    (a) that he was aware that there was a problem with water flowing across the subject road;
>    (b) that there was a work order done to have this corrected; and
>    (c) that this was supposed to have been repaired a long time before the night of the subject accident.

Hale alluded to these statements in her deposition testimony as well. During his deposition, Mr. Hudson denied making these statements. In fact, he denied ever talking with Hale on the morning of her accident.

The County attempts to weaken the effect of this evidence by pointing to the following statements made by Hale during her deposition:

> Q. What did [Mr. Hudson] say to you?
> A. He told me they had a work order on the road, and it should have already been fixed, is what he told me. They had some problems with the overflow. I don't know. I wasn't feeling too perky.
>
> . . . .
>
> Q. But do you recall specifically what he said was wrong with the road?
> A. No, I don't. . . .
>
> . . . .
>
> A. . . . The road commissioner came up and apologized to me and asked me if I was okay and if there was anything that he could do, you know. And he said that there was a work order. This work should have been done a long time ago. So I think that there's some issue there.
> Q. And I asked you earlier, but let me make sure I understand. What work do you think he was talking about, or what work —
> A. You'll have to ask him. I don't know what work. You will have to ask the State.

-13-

Q. You don't know what he was referring to?
A. You probably need to get the work order.
Q. I'm just asking you what your knowledge is.
A. I don't know. I just know that there was work. The water —
    he was talking about the water being over the roadway.
Q. Okay. So he was talking about —
A. I'm sure they had prior knowledge of the water problem.
Q. Okay. Let's take it one at a time. You said that he said the
    work should have been done a long time ago?
A. Uh-huh.
Q. Do you know what work he was talking about, or do you have
    an idea of what work he was talking about?
A. I imagine to fix the problem.
Q. What problem?
A. The water running over the road —
Q. Okay. But do you have —
A. — that caused the freeze.
Q. Do you have any personal knowledge of that?
A. No, I don't have any personal knowledge of that.
Q. You just — I don't want to say you're guessing, but —
A. No. I'm going on what he told me that night, so I'm not
    guessing about anything. I'm going on what the road
    commissioner told me that night.
Q. That some work needed to be done?
A. Yes.
Q. But you don't know what work that was?
A. No, I don't.

The County relies on this testimony to assert that Hale is unable to prove that any repair work alluded to by Mr. Hudson was related to the cause of her accident. However, for purposes of evaluating a motion for summary judgment, we must presume the facts presented by Hale in her affidavit to be true. **Byrd v. Hall**, 847 S.W.2d 208, 215 (Tenn. 1993).

While Mr. Hudson's statements and Hale's attempt to recount these statements at trial will undoubtedly draw evidentiary objections,[2] we are constrained "to view the evidence in a light favorable to the nonmoving party and *allow all reasonable inferences in his favor.*" **Id.** at 215 (emphasis added); ***see also Staples v. CBL & Assocs., Inc.***, 15 S.W.3d 83, 89 (Tenn. 2000). Based

---

[2] "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tenn. R. Civ. P. 56.06 (2005). "[T]he facts on which the nonmovant relies must be admissible at the trial but need not be in admissible form as presented in the motion . . . ." **Byrd**, 847 S.W.2d at 215–16. "This rule does not require that the facts be admissible as substantive evidence . . . ." **Burgess v. Harley**, 934 S.W.2d 58, 68 (Tenn. Ct. App. 1996).

on the evidence presented by Hale in her affidavit and her deposition testimony, it is reasonable to infer, given the context in which the statements were made, that, when Mr. Hudson allegedly alluded to work to be performed on Brighton Road during their conversation on the morning of the accident, he was referring to a problem with the roadway related to the cause of Hale's accident. We are not permitted to weigh the evidence or engage in an assessment of the credibility of a witness when evaluating the correctness of a grant of summary judgment to a party. *See Byrd*, 847 S.W.2d at 216. While Hale will undoubtedly face many obstacles at trial when attempting to prove the elements of her claim, *see, e.g., Burgess v. Harley*, 934 S.W.2d 58, 67–68 (Tenn. Ct. App. 1996), the evidence she presented in opposition to the County's motion for summary judgment is sufficient to establish a genuine issue of material fact concerning whether the County had actual notice of "a defective, unsafe, or dangerous condition" on Brighton Road.

The present record contains material factual disputes concerning whether the condition of the roadway at the time of Hale's accident constituted a "defective, unsafe, or dangerous condition." Moreover, a material factual dispute exists concerning whether the County had actual knowledge of such condition. Accordingly, we reverse the trial court's grant of summary judgment to the County.

**IV.**
**CONCLUSION**

For the foregoing reasons, we reverse the trial court's grant of summary judgment to the Appellee, and remand this case to the trial court for further proceedings. Costs of this appeal are to be taxed to the Appellee, Lincoln County, Tennessee, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE