# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### December 12, 2013 Session

## CAREY P. MERRELL v. THE CITY OF MEMPHIS, TENNESSEE

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003979-10 Div. VIII     Robert Samual Weiss, Judge**

---

**No. W2013-00948-COA-R3-CV - Filed January 16, 2014**

---

This is a Governmental Tort Liability action. Plaintiff/Appellant was injured when his motorcycle hit a pothole. Appellant sued the Appellee The City of Memphis for negligence. Following a bench trial, the trial court found that Appellant had failed to prove that the City had actual or constructive notice of the dangerous condition on its roadway so as to lift immunity under Tennessee Code Annotated §29-20-203(b). Accordingly, the court dismissed the lawsuit. We conclude that the evidence does not preponderate against the trial court's finding that the City had no notice of this dangerous condition. Affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

David A. McLaughlin and William T. Hackett, Memphis, Tennessee, for the appellant, Carey P. Merrell.

Robert W. Ratton, III, and Roane Waring, III, Memphis, Tennessee, for the appellee, The City of Memphis, Tennessee.

## OPINION

On August 24, 2009, Appellant Carey P. Merrell was operating his Honda VTX motorcycle, traveling northbound on New Horn Lake Road in Memphis. Mr. Merrell claims that as he approached Rivergate Road just south of Interstate 55, he hit a large depression, i.e., pothole, that caused him to crash his motorcycle. As a result of the crash, Mr. Merrell sustained "serious injuries," which required numerous surgeries, including the placement of

a steel plate and seven screws in his left foot and ankle.

On August 12, 2010, Mr. Merrell filed suit against the Appellee The City of Memphis (the "City") under the Tennessee Governmental Tort Liability Act ("GTLA"), which provides, in relevant part, that:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.
>
> (b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302 [repealed].

Tenn. Code Ann. §29-20-203.[1]  Specifically, Mr. Merrell's complaint alleges that the City was negligent in allowing a defect in the roadway, i.e., the pothole, to exist.  Mr. Merrell requested damages of $300,000.00, the maximum allowable under the GTLA.  On September 7, 2010, the City filed its answer, denying any liability under the GTLA.  The City specifically averred that it "had no actual or constructive notice of any defect . . . on New Horn Lake Road."

After several continuances, the case was heard by the court, sitting without a jury, on January 30th, 31st, and February 7, 2013.  In addition to Mr. Merrell's testimony, and three evidentiary depositions from Mr. Merrell's treating physicians, the trial court heard testimony from three City of Memphis employees.  Elmer Fondren, Jr., a pothole foreman for the City in August of 2009, testified that he had worked for the City for over thirty-five years before retiring in October of 2012.  He testified that he had specifically worked New Horn Lake Road for two or three years, including the year of Mr. Merrell's accident.  At trial, Mr. Fondren was shown Exhibit 2, which he identified as the offending pothole that allegedly caused Mr. Merrell's accident.  Mr. Fondren also identified at least one patch that had been

---

[1] The General Assembly enacted the GTLA "to codify the general common law rule that 'all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities,' Tenn. Code Ann. § 29-20-201(a), subject to statutory exceptions in the Act's provisions." *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). Passage of the GTLA constituted "an act of grace through which the legislature provided general immunity to governmental entities from tort liability but removed it in certain limited and specified instances." *Kirby v. Macon County*, 892 S.W.2d 403, 406 (Tenn.1994).

made around the pothole, which he noted was an attempt to repair that section of the road. During direct examination, Mr. Fondren was shown a series of daily pothole logs; Mr. Fondren stated that these logs showed only the approximate locations where his crew or other City crews had repaired defects in the road. Trial Exhibit 13 (collective logs) indicated that three separate defects were repaired on New Horn Lake Road in 2007. Although the exact location of these repairs was not contained in the log, Mr. Fondren stated that at least one of these repairs was specifically made at New Horn Lake Road just south of Rivergate, and may have been the repair that resulted in the patch around the offending pothole (as noted from Exhibit 2, *supra*). From Trial Exhibit 15, Mr. Fondren identified more pothole repairs on New Horn Lake Road north of Rivergate, but could not say for certain that these repairs were to this specific pothole. Although Mr. Fondren testified that he did receive written instruction to cut and patch specific areas, he stated that the written instructions are not retained, and that the log may not be as specific as the written instruction would be.

On cross-examination, Mr. Fondren testified that there was a lot of truck traffic on New Horn Lake Road, and that trucks tend to cause more damage to the road surface than cars. Mr. Fondren further stated that New Horn Lake Road was a "troublesome road," and (from Exhibit 2) opined that this particular pothole may have received numerous repairs based on the varying colors of patch material. However, his testimony did not establish that any repairs had been performed on this pothole since at least 2007. As noted below, Mr. Fondren testified that Memphis Light, Gas & Water had made repairs to a water leak at this location in 2007, but there is no indication that repairs had been needed or made since that time.

Mr. Merrell also called Morris Barker, a City of Memphis cut and patch crewman. Mr. Barker, like Mr. Fondren, testified that there were numerous potholes on New Horn Lake Road at or near Rivergate. From Trial Exhibit 3, he stated that asphalt had been used to repair the subject pothole. Although Mr. Barker states that on January 17, 2008, January 30, 2008, and March 24, 2008, he repaired potholes near the location of the pothole at issue here, he could not say for certain that he had repaired this particular pothole on more than one occasion. Like Mr. Fondren, and as discussed below, Mr. Barker opined that potholes may form overnight due to water leaks, and stated that "on at least one occasion," the City had made some sort of repair to this pothole.

Finally, Mr. Merrell called Manuelito Belen, the current Street Maintenance Administrator for the City's Public Works Department. Mr. Belen testified that there were no calls to the City's pothole hotline concerning this particular pothole, nor any other potholes on New Horn Lake Road. Mr. Belen explained, however, that "[t]here are many different ways that the City gets notified of particular deficiencies on the roads," including the observation of City employees. Regardless, Mr. Belen could not state whether there was

any such notice of this pothole, or any other potholes in the general vicinity of the subject pothole.

On April 10, 2013, the trial court entered its Order of Judgment, dismissing Mr. Merrell's lawsuit. As is relevant to the instant appeal, the trial court specifically found that Mr. Merrell had failed to prove, by a preponderance of the evidence, that the City had either actual, or constructive notice of the pothole so as to satisfy the statutory requirement set out at Tennessee Code Annotated Section 29-20-203(b), *supra*. In relevant part, the court's judgment states:

> [N]o proof was presented in this case to support that the City had actual notice. . . .
>
> *                                    *                                    *
>
> The Plaintiff failed to establish constructive notice. . . . First, there was no proof at trial that the City of Memphis had created the depression that caused the Plaintiff's accident. Second, the Plaintiff provided no proof that the dangerous condition had existed for a sufficient length of time that the City should have known about it. No witness testified that they had ever seen this specific depression prior to August 24, 2009. The Plaintiff did not introduce at trial any phone calls or testimony from citizens that had observed this depression in the road. Both Mr. Fondren and Mr. Barker, who were experienced road maintenance crew leaders acknowledged that a pothole may form overnight.
>
> Third, the evidence was not sufficient to prove a pattern of conduct caused and/or foretold of the dangerous condition. The proof submitted at trial identified eleven occasions over approximately 18 months where the City of Memphis had fixed potholes in the general area of the accident. While evidence had been submitted that New Horn Lake was a "troublesome" road, the Court does not find evidence that sufficiently indicated a problem at this specific location to constitute a pattern. Mr. Fondren testified that the primary problems in the road occurred south of Rivergate [Mr. Merrell's accident occurred north of Rivergate]. He stated that they had had problems in the general area of the depression at issue in this case but there was no proof at trial that the City had fixed any pothole or been made aware

-4-

of any defects in the road since June 20, 2008, over a year before this accident. Accordingly, the Plaintiff has failed to show the City of Memphis had constructive notice of this dangerous condition.

Mr. Merrell appeals. He raises two issues for review as stated in his brief:

1. Whether the evidence preponderates against the trial court's finding that the City of Memphis did not have notice of the dangerous, defective pothole, which caused Appellant's injuries?

2. Whether the trial court erred by basing its decision on lay opinion from two City of Memphis employees [i.e., Messrs. Fondren and Barker] purporting that potholes may form overnight?

Because this case was tried by the court, sitting without a jury, this Court conducts a *de novo* review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court reviews the trial court's resolution of legal issues without a presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001).

Three criteria must be satisfied in a Section 29-20-203(a) action. *Burgess v. Harley*, 934 S.W.2d 58, 63 (Tenn. Ct. App. 1996). First, "the local government must own and control the location or instrumentality alleged to have caused the injury." *Id*. Second, the location or instrumentality must be "defective, unsafe, or dangerous." *Id*. Third, the local government entity must have "constructive and/or actual notice" of the defective, unsafe, or dangerous condition. *Id*. The issue of notice is a finding of fact, which we review *de novo* with a presumption of correctness. *Halliburton v. town of Halls*, 295 S.W.3d 636, 638 (Tenn. Ct. App. 2008).

**Actual Notice**

The Tennessee Supreme Court has defined actual notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent

persons to investigate and ascertain as to the ultimate facts." ***Kirby v. Macon County***, 892 S.W.2d 403, 409 (Tenn. 1994) (quoting ***Texas Co. v. Aycock***, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn.1950)). Here, the trial court specifically found that the City did not have actual notice of the offending pothole. In his brief, Mr. Merrell asserts that Mr. Fondren's testimony preponderates against the trial court's finding that there was no actual notice in this case. Specifically, Mr. Merrell argues that Mr. Fondren testified that he personally recognized the pothole that caused Mr. Merrell's injuries, and further testified that he believed the dangerous condition (i.e., the pothole) was caused by a water leak:

> Q. Mr. Fondren, you said that's (Trial Exhibit 2) a water leak and you seemed very confident. What makes you look at that picture and think it's a water leak?
> A. Because we had called Gas, Light & Water.
>
> \*                 \*                 \*
>
> Q. Okay. But that area wasn't like the area at Rivergate and south where you had the majority of your problems on Horn Lake?
> A. I believe this was about the only place north of Rivergate. I believe it was about the only place we dealt with regularly.
> Q. What do you mean by that?
> A. Like I said, because it was a water leak. So we–we–there was–so we checked it more regular [sic].

As discussed above, the substance of Mr. Fondren's testimony, when read in context, is that his crew regularly patrolled New Horn Lake Road, looking for potholes and other damage to the road's surface. Although Mr. Fondren testified that if his crew discovered a defect in the road, it would either fix the defect, or place a barricade around the defect and notify dispatch if more extensive repair was needed, as set out above, Mr. Fondren's testimony states only that the area close to the site of the accident received more frequent patrols because of a water leak in that area; Mr. Fondren further stated that a water leak could cause a pothole to form quickly (sometimes overnight). However, what is missing from Mr. Fondren's testimony is any indication that the regular patrols of this area of New Horn Lake Road had resulted in actual knowledge of this particular pothole. In fact, the record indicates that the City had not conducted any repairs at this location since April 24, 2008, which was more than a year prior to this accident.

In addition, and as discussed above, Mr. Belen testified that after reviewing the City's records concerning this area of New Horn Lake Road, there was no indication that the City

-6-

had received any complaints concerning a pothole in this area. Accordingly, Mr. Merrell's reliance upon the case of *Russell v. Anderson County*, No. E2010-00189-COA-R3-CV, 2011 WL 486900 (Tenn. Ct. App. Feb. 11, 2011) is misplaced. In *Russell*, the Assistant Public Works Director testified that the city had been informed that the intersection where the accident occurred was dangerous. *Id*. at fn. 5. A school board member had requested that Anderson County install pedestrian head signals at the intersection. *Id*. at \*8. Anderson County denied the request and, following that decision, the plaintiff was involved in an accident under circumstances similar to those predicted by the school board member. Here, there is no proof that the City failed to respond to a dangerous condition at this location. The City received no calls regarding this pothole.

While we concede that Mr. Fondren's testimony, along with the repair logs that were admitted to evidence, reveals that this section of New Horn Lake Road had been repaired approximately eleven times over an approximately eighteen month period, these repairs were made in the general area of the accident and there is no proof that this particular pothole or area of the road was more troublesome than other areas. In fact, Mr. Fondren testified that the primary problems on New Horn Lake Road occurred south of Rivergate Road. Mr. Merrell's accident occurred north of Rivergate Road. From the totality of the circumstances, the evidence does not preponderate against the trial court's finding that the City had no actual notice of this pothole. Therefore, keeping in mind that the burden of proof remains with Mr. Merrell, we must next ascertain whether the City had constructive notice of the pothole.

**Constructive Notice**

Constructive notice, as defined by our Supreme Court, is "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Kirby*, 892 S.W.2d at 409 (quoting Black's Law Dictionary 1062 (6th ed.1990)). A plaintiff can establish constructive notice in one of three ways. First, a plaintiff may demonstrate that the owner or operator of the premises caused or created the condition. *See  Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App.1989). Second, if a third party caused or created the dangerous condition, a plaintiff may prove constructive notice by evidence that the condition "existed for a length of time" that the owner/occupier "in the exercise of reasonable care, should have become aware of that condition." *Elkins v. Hawkins County*, No. E2004-02184-COA-R3-CV, 2005 WL 1183150, at \*4 (Tenn. Ct. App. May 19, 2005). Neither of these theories was espoused in the instant lawsuit. Rather, Mr. Merrell proceeded under the third theory by which a plaintiff may show constructive notice— by proving that "a pattern of conduct, recurring incident, or general continuing condition" caused the dangerous condition. *Blair v. West Town Mall*, 130 S.W.3d 761, 765-66 (Tenn. 2004). This theory, which is known as the "common occurrence" theory, was adopted by our

Supreme Court in the *Blair* case. In *Blair*, a plaintiff sued West Town Mall after she slipped and fell on a slippery oil spot as she was leaving the premises. *Blair*, 130 S.W.3d at 762. She claimed that the defendant failed to inspect the parking lot and should have known of the slick oil spots because of how often city buses stopped at the place where she fell. *Id*. at 762-63. In adopting the common occurrence theory as a method of proving constructive notice, the Court held that a plaintiff can establish constructive notice by showing that "a pattern of conduct, recurring incident, or general continuing condition" caused the dangerous or defective condition. *Id*. at 766. A plaintiff, when using this method of proving constructive notice, is not required to demonstrate the duration of the dangerous condition, which can be difficult. *Id*. The question becomes whether the condition occurs often enough that the owner is put on constructive notice of its existence. *Id*.

As discussed above, Mr. Fondren testified that the area in the general vicinity of the accident site had been "troublesome," meaning that the City had made numerous repairs in that section of the road prior to the accident. However, there is no indication that this particular pothole had been a recurring problem prior to the date of the accident. Mr. Merrell relies upon the case of *Bivins v. City of Murfreesboro*, M2009-01590-COA-R3-CV, 2010 WL 2730599 (Tenn. Ct. App. July 9, 2010) for the proposition that the totality of the circumstances in this case should have put the City on notice that this particular spot on New Horn Lake road was a dangerous condition based upon a pattern of conduct, including recurring repairs to the area. In *Bivins*, this Court held that, based on the totality of the circumstances, the City of Murfreesboro was aware of a dangerous road condition, despite the lack of proof that there had been an accident at the location prior to the plaintiff's filing the lawsuit. Our holding in *Bivins* was based upon the following facts:

> The appropriate inquiry on notice is, on July 5, 2005, the date of the Bivins accident, what did the city know and when did the city know it. The city knew that there had been over 20 reported accidents on South Rutherford in the last three years. The city knew that most of these accidents occurred when the pavement was wet, that the accidents occurred in both directions, and that two accidents had been fatal within the city limits. When it rained, police officers were ordered to show a presence on South Rutherford to slow down traffic between Church and Broad Street. The city knew of the newer pavement at the location of the Southern Container driveway, which was in the middle of much older pavement along South Rutherford. Perhaps most importantly, in June 2005 the city received a report from Wiser indicating that super elevation was lacking "throughout Rutherford Boulevard" and that the road was not adequately

super elevated according to AASHTO design guidelines.

*Bivins*, 2010 WL 2730599, at *3. This portion of our opinion catalogs numerous incidents and circumstances that should have put the City of Murfreesboro on notice of the dangerous condition of South Rutherford Road. In *Bivins*, the city had knowledge of numerous accidents on the road, and was further aware that the road itself was not in compliance with national safety standards and guidelines. *Id*. at fn. 4. In short, in *Bivins*, the city was aware that the entire road was a dangerous condition. The instant case is distinguishable on several points. Here, there is no evidence that there were any accidents at this site prior to Mr. Merrell's. Moreover, there is no indication that New Horn Lake Road, or any portion thereof, was not in compliance with accepted safety standards at the time of the accident. Finally, there is no indication that the City routinely conducted repairs to this pothole, or that the pothole often recurred.

We conclude that the facts presented in the instant appeal are more analogous to the facts presented in the case of ***Alexander v. City of Murfreesboro***, M2010-00367-COA-R3-CV, 2011 WL 882441 (Tenn. Ct. App. March 14, 2011), *perm. app. denied* (Tenn. July 15, 2011). The accident in *Alexander* occurred some nine months before the accident in the *Bivins* case, but on the same road, i.e., South Rutherford Road in Murfreesboro. To establish constructive notice on the part of the city, the plaintiff in *Alexander* alleged that approximately twenty accidents had occurred on this road in the five years preceding the subject accident. Plaintiff further alleged that city employees had routinely replaced gravel where cars had run off the road, and that the city had approved modifications that created a dangerous condition. *Id*. at *2. On appeal, this Court declined to extend its holding in *Bivins* in the absence of proof of fatal accidents, or studies to show that the road was dangerous at the time of the *Alexander* plaintiff's accident. Specifically, we held that:

> Only a portion of the circumstances deemed significant in *Bivins* are present in the instant case, which occurred nine months earlier. Thus, this matter presents a much closer call. Before the *Alexander* accident, there had been no fatal accidents, no study of the road, and no expressed concerns or extra efforts by the police regarding this road.

*Alexander*, 2010 WL 882441, at *3. Likewise, the record in the instant case shows that on the date of the accident (i.e., August 24, 2009), the City was not aware of any accidents that had occurred at the location of this particular pothole. Additionally, there had been no calls to the pothole hotline concerning any issue at this location since 2006. Although City employees conducted routine inspections of New Horn Lake Road, including the accident site, there had been no repair to this specific spot in the sixteen months preceding Mr.

Merrell's accident. Finally, there is no record of any accident at this location, much less a series of accidents that might have risen to the level of frequency necessary to make Mr. Merrell's accident foreseeable by the City.

In the case of ***Nolley v. Eichel***, No. M2006-00879-COA-R3-CV, 2007 WL 98-603 (Tenn. Ct. App. April 2, 2007), the plaintiff was injured when she fell down at a bar severely cutting her hand on a broken beer bottle. *Id*. at \*1. The bar manager testified at the summary judgment hearing that he had often picked up broken beer bottles from the floor and that other patrons had cut themselves on broken glass on the floor. *Id*. at \*4. In upholding the judgment in favor of the defendant for lack of notice, this Court held that multiple occurrences of broken bottles and a couple of injuries over an eight year period did not create a common occurrence that put the bar on constructive notice of a dangerous condition. In so holding, we stated that in order to find constructive notice under the common occurrence theory, the plaintiff must show that the dangerous condition occurred in "the same approximate location and in such a frequent manner, that the happening of the condition was foreseeable by the defendants." *Id*. at \*4; *but see **Barrett v. Red Food Stores***, No. 01-A-019108CV00302, 1992 WL 33891 (Tenn. Ct. App. Feb. 26, 1992) (finding that ice cream deliveries were a regular occurrence at the grocery store, and as a result, the water spilling from the ice cream as it was being placed into the freezer was also a common occurrence). Here, the proof of a dangerous condition based upon common occurrence is even more sparse than in ***Nolley***. As noted above, in the instant case, there is no proof of any accident at this location prior to Mr. Merrell's. There is no record of the City receiving or responding to any complaints about a dangerous condition at this location. Although the City admits that it had completed repairs at this site in the past, there is no evidence that any repairs were made within approximately sixteen months of this accident. Mr. Fondren testified that in the past (sometime in 2007), there had been a water leak at this location, but explained that the City had called Memphis Light, Gas & Water to repair the leak and had then made its repairs to the road surface. This repair was made at least sixteen months prior to Mr. Merrell's accident according to the logs that were admitted to evidence. Although the trial court's judgment notes Messrs. Fondren and Baker's testimonies that water leaks may cause a pothole to form overnight, there is no indication that the City knew or should have known that the repaired water leak may have recurred at this specific location, necessitating further road repair at the time of Mr. Merrell's wreck. Taking into account the presumption of correctness in favor of the trial court's findings and considering the totality of the evidence, we must conclude that Mr. Merrell failed to meet his burden to show constructive notice on the part of the City. Accordingly, we affirm the trial court's finding that the City did not have constructive notice of a dangerous condition on the roadway. We now turn to address Mr. Merrell's second issue concerning the testimonies of Messrs. Fondren and Barker.

**Lay Witness Testimony**

Issues regarding admission of evidence in Tennessee are reviewed for abuse of discretion. ***Dickey v. McCord***, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). "[T]rial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant." ***Id***. Our Supreme Court discussed the abuse of discretion standard in ***Eldridge v. Eldridge***, stating:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn.2001) (citations omitted). Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. ***Id.*** When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." ***Id***.

It is undisputed that neither Mr. Fondren nor Mr. Barker was qualified as an expert witness. Both individuals, therefore, testified as lay witnesses. Under Tennessee Rule of Evidence 701(a), lay opinion testimony is permissible if "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." "Thus the admissibility of a lay witness's testimony rests on whether the facts in issue are within the range of knowledge or understating of ordinary laymen." ***State v. Boggs***, 932 S.W.2d 467, 474 (Tenn. Crim. App.1996). ("Consequently, a lay witness may testify that a person was 'drunk' or that a car was traveling 'fast.'" Rule 701, Tenn. R. Evid., comment). However, Tennessee Rule of Evidence 701 does "not authorize lay testimony on subjects that require special skill or knowledge outside the realm of common experience." Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence § 7.01[4][b]. "In situations where a witness 'cannot readily and with equal accuracy and adequacy' testify without an opinion, the witness may state opinions requiring no expertise." Tenn. R. Evid. 701, Advisory Commission Comment. In addition, Tennessee Rule of Evidence 701 requires lay witnesses to explain the basis for their personal knowledge

of the facts that form the basis of their opinions. *See* Neil P. Cohen et al., Tennessee Law of Evidence § 701.3 (3d ed. Supp.1998). Thus, lay opinions that are based on facts or circumstances not in evidence must be rejected. *See **Pierce v. Pierce***, 127 S.W.2d 791, 792 (Tenn. 1939).

Morris B. Barker, a "cut and patch" foreman with the City's Street Maintenance Department at the time of the accident, and Mr. Fondren both opined that a water leak could cause a pothole to form overnight. On appeal, Mr. Merrell asserts that this opinion testimony was outside the scope of Rule 701, *supra*, and that the trial court's reliance upon this testimony constitutes reversible error. After reading the transcript of both testimonies, we respectfully disagree.

Both Mr. Fondren and Mr. Barker have worked with the City road crew for many years; both are experienced in issues related to road maintenance. From our review of the record, we conclude that Messrs. Fondren and Barker both testified concerning their own observations. Mr. Fondren testified that he had observed a water leak in the general area of the accident scene. Both he and Mr. Barker testified that in their personal experience, they had each seen potholes form on roadways overnight due to a water leak. As noted above, the admissibility of a lay witness' testimony "rests on whether the facts in issue are within the range of knowledge or understanding of ordinary laymen." ***Boggs***, 932 S.W.2d at 474.

Here, Mr. Merrell relies upon the case of ***State v. Brown***, 836 S.W.2d 530, 550 (Tenn. 1992). In ***Brown***, the Tennessee Supreme Court addressed the admissibility, under Rule 701, of testimony from two lay witnesses. First, the Court examined testimony from a nurse who stated that an injury on the crime victim's foot looked like a cigarette burn. The Court held that this form of lay opinion testimony was permissible because it described the nurse's observations, and was not outside "the range of common knowledge." ***Id***.; *see also **National Life & Acc. Ins. Co. v. Follett***, 80 S.W.2d 92, 98 (Tenn. 1935) (holding that a lay witness may also opine or infer so long as his or her opinion is "within the range of common knowledge."). The ***Brown*** Court also examined the admissibility of testimony from a paramedic who opined as to the source of the crime victim's injuries. The Court held that the paramedic's testimony was inadmissible as improper lay opinion. ***Id***. In so holding, the Court reasoned that this type of opinion required specialized skill or expertise. ***Id***. Ultimately, the Court held this to be harmless error because there was ample admissible evidence that identified the source of the crime victim's injuries. ***Id.*** Mr. Merrell argues that Mr. Fondren and Mr. Barker's opinion that the pothole in question was caused by a water leak and that potholes can form overnight, is analogous to the paramedic's testimony in ***Brown***. We disagree. We conclude that it is within the "understanding of an ordinary layperson," ***Boggs***, 932 S.W.2d at 474, that a water leak may cause damage to asphalt. Accordingly, the deduction that water leaks can erode asphalt does not require any more

expert knowledge than the opinion of a nurse that an injury looks like the result of a cigarette burn. **Brown**, 836 S.W.2d at 530.

However, even if we assume, *arguendo*, that the trial court erred by admitting the testimonies of Messrs. Fondren and Barker, this admission would be harmless error because, as set out and discussed in detail above, there are ample facts to support the trial court's decision without consideration of the contested testimony. It is well settled that a judgment "shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). In short, the record does not preponderate against the trial court's finding, even without considering the contested testimonies of Messrs. Fondren and Barker.

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed to the Appellant, Carey P. Merrell, and his surety.

_____
J. STEVEN STAFFORD, JUDGE